850 So.2d 1265 (2003)
Columbus Rickey ASHLEY, Petitioner,
v.
STATE of Florida, Respondent.
No. SC00-2586.
Supreme Court of Florida.
January 9, 2003.
Nancy A. Daniels, Public Defender, and Paula S. Saunders, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Petitioner.
Charlie Crist, Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Trisha E. Meggs, Assistant Attorney General, Tallahassee, for Respondent.
*1266 QUINCE, J.
We have for review Ashley v. State, 772 So.2d 42 (Fla. 1st DCA 2000), which expressly and directly conflicts with the decision in Evans v. State, 675 So.2d 1012 (Fla. 4th DCA 1996). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we approve the decision in Evans and quash the decision in Ashley.
The issue in these two cases concerns whether a trial court can bring a defendant back to court, vacate the sentence imposed, and resentence him to what amounts to a more onerous sentence after he has begun serving the original sentence, without violating the double jeopardy clause. The facts of Ashley are as follows. Columbus Ashley was charged with possession of a firearm by a convicted felon. Prior to trial, the State filed a notice of intent to classify Ashley as a habitual violent felony offender (HVFO) based on a previous robbery conviction. At trial, the jury found Ashley guilty as charged on the possession offense.
Ashley's status as a possible habitual violent felony offender was argued to the trial judge by the prosecutor. The trial judge was presented with Ashley's criminal history, and aggravating and mitigating circumstances were discussed. Defense counsel acknowledged that Ashley had two prior felony convictions: robbery and possession of cocaine. An argument was made to the trial court that it had discretion in whether to find and sentence Ashley as a habitual violent felony offender. At no time during this hearing on July 8, 1999,[1] or the actual sentencing on July 9, 1999, did the trial court pronounce Ashley a habitual violent felony offender.
At the sentencing hearing on July 9, 1999, the trial court again indicated the factors that supported aggravation and those in support of mitigation. The court then orally sentenced Ashley as a habitual felony offender (HFO), and sentenced him to twenty-five years in prison. The prosecutor was present and did not bring to the court's attention any failure to find Ashley a habitual violent felony offender. The only issues addressed by the State at this point were restitution and a nolle pros of the remaining counts. The final statement made by the trial judge was, "Take Mr. Ashley back to begin his sentence."
However, the written judgment and sentence indicated that Ashley had been sentenced as an HVFO to twenty-five years in prison with no minimum term noted on the written sentencing form. On July 12, 1999, Ashley reappeared in court, and the trial judge orally resentenced him to twenty-five years in prison as an HVFO, and for the first time imposed a ten-year minimum mandatory term. The July 12 written sentencing order was consistent with the court's July 12 oral pronouncement.
Ashley filed a timely notice of appeal on July 15, 1999. After notice was given, but before the initial brief was filed, Ashley filed a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), alleging that the resentencing on July 12, 1999, constituted a double jeopardy violation. The trial court did not rule on the motion; therefore, it was deemed denied. Ashley raised the double jeopardy claim on his direct appeal. See Ashley v. State, 772 So.2d 42 (Fla. 1st DCA 2000). The First District rejected this claim, finding that the trial court's imposition of an HFO sentence "was the result of a simple mistake about what had *1267 been noticed and then proven the day before. It was not a discretionary judgment based on the facts to impose a lighter sentence." Id. at 43.
The First District's holding in Ashley is in conflict with the Fourth District's holding in Evans. In Evans, the defendant pled and was adjudicated guilty for possession of cocaine and aggravated battery. As part of the plea agreement, Evans agreed that he qualified as an HFO, and that he would be sentenced as an HFO if he violated probation. Evans violated his probation and was sentenced to prison time as an HFO. The sentences were suspended, and Evans was given probation; however, the judgment of HFO status was never set aside. As a result, and by agreement of the parties, the court vacated the suspended sentences, allowing Evans to be resentenced on his initial violation of probation. At resentencing, the trial court did not state that Evans was being sentenced as an HFO; however, the written order did reflect that he was being habitualized. Two days later, the State filed a motion to clarify the sentence because the commitments prepared by the court clerk did not reflect habitualization. Evans objected on grounds of double jeopardy, recalling that the court's oral pronouncement did not mention habitualization. The trial court then ordered that the commitments be amended to reflect habitualization.
On appeal, the Fourth District recognized that the trial court's failure to impose habitualization during oral pronouncement may have been an oversight. Nevertheless, the Fourth District found the trial court's clarification to be in error, holding that once a legal sentence is imposed, jeopardy attaches and the defendant cannot be resentenced to a greater term of imprisonment.
We agree with the reasoning of the Fourth District. Once a sentence has been imposed and the person begins to serve the sentence, that sentence may not be increased without running afoul of double jeopardy principles. See, e.g., Lippman v. State, 633 So.2d 1061 (Fla.1994); Clark v. State, 579 So.2d 109 (Fla.1991); N.H. v. State, 723 So.2d 889 (Fla. 5th DCA 1998). To do so is a clear violation of the Double Jeopardy Clause, which prohibits multiple punishment for the same offense. See State v. Wilson, 680 So.2d 411, 413 (Fla.1996). Here, the trial court brought Ashley back to court and resentenced him to a more onerous sentence after he had begun serving the original sentence. The trial court's actions violated Ashley's constitutional right against double jeopardy.
This Court has previously found that Florida's sentencing procedures prevent subsequent imposition of new terms to a previously announced sentence. For example, in Justice v. State, 674 So.2d 123 (Fla.1996), the defendant was found guilty of two counts of forgery and placed on probation, subject to three conditions. However, the trial court entered a written judgment which contained numerous probation conditions not orally pronounced at sentencing. On appeal, the Fifth District remanded the case to the trial court to resolve the discrepancy between the probation conditions imposed at sentencing and those contained in the written order. Although the Fifth District held that the trial court could reimpose the unannounced conditions at resentencing, it certified the issue to this Court as a question of great public importance.
Upon review, this Court held that special conditions of probation must be imposed at sentencing and may not be reimposed at resentencing. This Court based its decision in part "on a judicial policy that the actual oral imposition of sanctions should prevail over any subsequent written order to the contrary." Id. at 125. This *1268 Court further noted that written sentences are usually just a record of the actual sentence required to be pronounced in open court.[2] Thus, when conflict arises between the written sentence and the oral pronouncement, the oral pronouncement prevails.
This Court further noted that the subsequent imposition of new conditions or terms to a sentence or order of probation violates the constitutional protection against double jeopardy. Adopting the reasoning of the dissent in the Fifth District's opinion, this Court opined:
An order of probation, like any other aspect of sentencing, ought not to be a work in progress that the trial court can add to or subtract from at will so long as he or she brings the defendant back in and informs the defendant of the changes. To permit this would mean a lack of finality for no good reason and multiple appeals. It is not too much to ask of a sentencing judge to decide on and recite the special conditions of probation at the sentencing hearing, just as is done with the balance of the sentence. If the court has omitted a condition it wishes it had imposed, its chance has passed unless the defendant violates probation.
Id. at 126 (quoting Justice v. State, 658 So.2d 1028, 1035-36 (Fla. 5th DCA 1995) (Griffin, J., dissenting)). We also find this reasoning persuasive. Our decision today is consistent with this reasoning and with our earlier precedent.
Additionally, the First District's decision in this case conflicts with a longstanding principle of lawthat a court's oral pronouncement of sentence controls over the written document. See, e.g., State v. Jones, 753 So.2d 1276, 1277 (Fla.2000); State v. Williams, 712 So.2d 762 (Fla. 1998); Justice, 674 So.2d at 126; Driver v. State, 710 So.2d 652, 653 (Fla. 2d DCA 1998). Generally, the oral pronouncement prevails unless the oral pronouncement is in error due to a clerical error such as the calculation of jail credit. See Martindale v. State, 678 So.2d 883, 884 (Fla. 4th DCA 1996).[3]
We recognize that the trial court's failure to state during its oral pronouncement of sentence that it was sentencing Ashley as a habitual violent felony offender may have been a simple mistake. However, based on the prior precedent from this Court, we must approve the Fourth District's opinion in Evans and disapprove the First District's decision in Ashley, because the oral pronouncement of sentencing controls. To hold otherwise does serious *1269 harm to the double jeopardy principles which have guided our courts for centuries. Thus, we quash the decision under review and remand for proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and PARIENTE, J., and SHAW, Senior Justice, concur.
PARIENTE, J., concurs with an opinion, in which ANSTEAD, C.J., concurs.
HARDING, Senior Justice, dissents with an opinion, in which WELLS and LEWIS, JJ., concur.
PARIENTE, J., concurring.
I concur fully in the majority opinion upon rehearing, although I have struggled with the competing policies represented by the majority opinion and the dissent. I write separately to address the concerns expressed in the dissenting opinion and why I felt compelled to join in this majority opinion.
When I concurred in the original majority opinion, I did so based on the notion that the Court could characterize what occurred in this case as a "scrivener's error." However, I now recognize that an error in an oral pronouncement cannot be properly labelled as "scrivener's error."[4] My overriding concern is that for the Court to endorse an exception that allows a trial court to "correct a mistake or misstatement during the oral pronouncement," as suggested by the dissent would run contrary to the constitutional principles of double jeopardy.
The law is clear that Ashley began serving his sentence upon conclusion of the hearing in which the court made its oral pronouncement. Troupe v. Rowe, 283 So.2d 857 (Fla.1973), is not easily distinguishable on this basis. Here, as in Troupe, jeopardy attached at the conclusion of the sentencing hearing in which the court pronounced sentence.
I simply cannot find room in our double jeopardy precedent for a "simple misstatement" exception. While in some cases, the possibility that the pronouncement contained a "mistake" or "misstatement" may be apparent, in other cases it may not be possible from the face of the record to discern if the trial judge's pronouncement was a "misstatement" or a change in the sentence upon further reflection.
Contrary to the dissent's suggestion, today's ruling does not result in "immunity," as the term has been used in pertinent United States Supreme Court precedent. In United States v. DiFrancesco, 449 U.S. 117, 131, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Court eschewed the notion that "sentencing should be a game in which a wrong move by the judge means immunity for the prisoner" in holding that a federal statute authorizing a government appeal from a sentence did not violate double jeopardy. In Bozza v. United States, 330 U.S. 160, 166-67, 67 S.Ct. 645, 91 L.Ed. 818 (1947), whence this quote originates, the Court held that the trial court could lawfully correct its error in failing to impose a mandatory fine.
In comparison, this case does not involve the State's right to appeal a sentence, and imposition of the mandatory minimum term on a habitual offender is discretionary. See State v. Hudson, 698 So.2d 831, 833 (Fla.1997). Elimination of the discretionary ten-year mandatory minimum term leaves Ashley with a twenty-five-year habitual *1270 offender sentence. This is hardly "immunity for the prisoner," as the term was used in DiFrancesco and Bozza.
I conclude that Cheshire v. State, 568 So.2d 908 (Fla.1990), on which the dissent relies, is distinguishable because it concerned the State's statutory right to appeal a downward departure sentence, which under DiFrancesco does not violate double jeopardy. We recognized in Cheshire that a reversal and remand for a sentence within the guidelines was compelled by Pope v. State, 561 So.2d 554 (Fla.1990), where we held that no further departure is allowed upon remand from a reversal of a departure sentence without written reasons. See Cheshire, 568 So.2d at 913. Precedent concerning state appeals of sentences that are contrary to applicable rules or statutes is not analogous.
Nor does Florida Rule of Criminal Procedure 3.800(b) provide analogous authority in support of the trial court's action in this case. The Court Commentary to the amendment creating this provision states that the State may file a rule 3.800(b)(2) motion "only if the correction of the error will benefit the defendant or correct a scrivener's error." Amendments to Florida Rules of Criminal Procedure 3.111(e) & 3.800, 761 So.2d 1015, 1023 (Fla.2000) (emphasis added). Neither condition applies here. First, imposition of the mandatory minimum term in this case is obviously to the defendant's detriment. Second, as the majority opinion recognizes, the concept of a scrivener's error does not encompass an oral pronouncement. Nor can the definition be widened without undermining the purpose of rule 3.800(b), which is to enable correction in the trial court of sentencing errors that harm the defendant. In this case, the defendant's attempt to have the trial court rescind the mandatory minimum term is an example of the appropriate use of rule 3.800(b).
The mandatory minimum term imposed on a habitual violent felony offender, like a guidelines departure, "is an extraordinary punishment that requires serious and thoughtful attention by the trial court." Ree v. State, 565 So.2d 1329, 1332 (Fla. 1990), receded from on other grounds by Smith v. State, 598 So.2d 1063 (Fla.1992). Today's decision helps ensure that the imposition of the mandatory minimum term authorized for a defendant who meets the criteria for a habitual violent felony offender sentence will receive the careful attention it deserves at the time that the sentence is imposed.
Finally, while I appreciate the dissent's concerns for the plight of the trial judge, these concerns cannot undermine the overriding constitutional concerns that govern the principle of double jeopardy. Undoubtedly, careful attention must be paid to detail in the pronouncement of sentence.
This case highlights the critical importance of accuracy at the sentencing hearing and the necessity of the State paying close attention to ensure that the oral pronouncement contains no "misstatements." Further, this case shows how the integrity and accuracy of the sentencing process can be improved if the written sentence is entered by the trial court at the same time as the oral pronouncement during the original sentencing hearing, rather than days or even weeks later.[5]
ANSTEAD, C.J., concurs.
*1271 HARDING, Senior Justice, dissenting.
I respectfully dissent. As the court below noted, "the Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." Ashley v. State, 772 So.2d 42, 43 (Fla. 1st DCA 2000) (quoting United States v. DiFrancesco, 449 U.S. 117, 135, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980)). As the majority concedes, the trial judge simply misspoke. During sentencing, instead of saying "habitual violent felony offender," the judge said, "habitual felony offender." The judge left out one word: "violent." Nevertheless, it is clear that the whole purpose of the proceeding was to determine whether Ashley qualified as a habitual violent felony offender. The State's notice was for habitual violent felony offender status; at the hearing the parties focused solely on Ashley's qualification as a habitual violent felony offender;[6] and the written order of July 9 states that Ashley was being adjudicated as a habitual violent felony offender. Under these circumstances, Ashley had no right to rely on the judge's simple misstatement, and thus he had no legitimate expectation of finality. Accordingly, jeopardy did not attach at that hearing. When the trial judge realized the mistake, Ashley was brought back into court and advised by the judge that:
We brought you back today because I made a mistake in the sentencing in that I sentenced you as an habitual felony offender and there was no such notice filed. However, there was an habitual violent offender notice filed. Therefore, let's go back and I'll set aside that earlier sentence and resentence the defendant at this time.
The court orally sentenced Ashley to twenty-five years in prison as a habitual violent felony offender and for the first time imposed a ten-year mandatory minimum term. Defense counsel did not object at the resentencing.
This Court's opinion in Cheshire v. State, 568 So.2d 908 (Fla.1990), is directly on point. In that case, the State filed a cross-appeal,[7] contending that the trial court erroneously departed downward from the sentencing guidelines without written reasons when the court imposed a seven-year sentence upon the defendant for burglary. Although the defendant conceded that the trial court erred, the defendant asserted that double jeopardy precluded the imposition of a greater sentence on remand. This Court disagreed, concluding that "[d]ouble jeopardy does not guarantee a defendant the benefit of a judge's good-faith mathematical or clerical errors." Id. at 913.
Florida Rule of Criminal Procedure 3.800(b) specifically provides that a motion to correct a sentencing error may be filed *1272 by the State to correct a scrivener's error. A mistake or misstatement made during the oral pronouncement of a sentence is analogous to a scrivener's error. Therefore, consistent with rule 3.800(b) and Cheshire, I would hold that a trial court, on its own motion, can correct a mistake or misstatement made during the oral pronouncement of a sentence, as was done in the case below.[8]
The majority's opinion in this case will turn sentencing hearings into the game-like atmosphere that the Supreme Court condemned in DiFrancesco. Unfortunately, the stakes of this game are very high. Undeserving defendants stand to gain much at the slightest slip of a judge's hand or tongue. The undue burden this Court places on sentencing judges is unrealistic. Without question, the losers of the game will be the citizens of this state.
WELLS and LEWIS, JJ., concur.
NOTES
[1] All the arguments and paperwork concerning prior judgments and sentences, as well as the probation office's report, were presented to the trial judge on the day before the actual sentencing.
[2] Florida Rule of Criminal Procedure 3.700(b) provides:

Every sentence or other final disposition of the case shall be pronounced in open court, including, if available at the time of sentencing, the amount of jail time credit the defendant is to receive. The final disposition of every case shall be entered in the minutes in courts in which minutes are kept and shall be docketed in courts that do not maintain minutes.
[3] Florida Rule of Criminal Procedure 3.800(b) specifically provides that a motion to correct a scrivener's error may be filed by the State. A scrivener's error literally refers to a written error. The definition for scrivener's error in Black's Law Dictionary directs the reader to "[s]ee clerical error." Black's Law Dictionary 1349 (7th ed.1999). However, we have defined scrivener's error as those "clerical or ministerial errors in a criminal case that occur in the written sentence, judgment, or order of probation or restitution. The term scrivener's error refers to a mistake in the written sentence that is at variance with the oral pronouncement of sentence or the record but not those errors that are the result of a judicial determination or error." Amendments to Fla. Rules of Criminal Procedure 3.111(e) & 3.800, 761 So.2d 1015, 1023 (Fla. 2000) (court commentary) (emphasis added).
[4] Both "scrivener" and its synonym "scribe" have as their source the Latin verb "scribere," meaning to write. See Merriam-Webster's Collegiate Dictionary 1050 (10th ed.1999)
[5] This suggestion has been previously made by the Court's Criminal Appeals Reform Act Committee. Currently, the Office of State Courts Administrator is involved in examining the feasibility of the technology necessary for this to be done statewide. Once developed, the technology should be made available to enable all trial judges to enter the written sentence at the time of the oral pronouncement. Both the defendant and the State would be present to review and sign the written sentence, further ensuring the integrity of the sentencing process and the accuracy of the sentence imposed.
[6] In fact, at the sentencing hearing, defense counsel noted that Ashley had two prior felony convictions: robbery and possession of cocaine. Defense counsel pointed out that the trial court had broad sentencing discretion, from the mandatory minimum ten years to a maximum of thirty years. A comparison of section 775.084(4)(a), Florida Statutes (1999) (habitual felony offenders) and section 775.084(4)(b) (habitual violent felony offenders) reveals that only the latter contains a mandatory term. Hence, it is clear from the record that defense counsel believed that Ashley was being sentenced as a habitual violent felony offender.
[7] In Cheshire, the trial court imposed a sentence of death, and therefore this Court had mandatory appellate jurisdiction in the case pursuant to article V, section 3(b)(1) of the Florida Constitution.
[8] Ashley is distinguishable from Troupe v. Rowe, 283 So.2d 857 (Fla.1973), and other similar cases. In Troupe, the defendant was charged with breaking and entering and grand larceny. During plea negotiations, the defendant and the State agreed upon a sentence of thirty days in jail followed by two years' probation, but the parties disagreed regarding whether there should be a "finding of guilt" or an adjudication. The trial court agreed with the defendant and entered a finding only, thereby allowing the defendant to return to military duty after his release. The defendant was sentenced accordingly, and the court took a recess. Shortly thereafter, a new assistant state attorney reiterated the State's objection to a "finding" rather than an adjudication. After a lengthy discussion, the court eventually set aside the earlier plea and sentence and ordered that the case proceed to trial. The defendant sought a writ of prohibition in the district court, and upon its denial, filed a petition for writ of certiorari with this Court. This Court ultimately held that "[j]eopardy had attached in petitioner's case and the sentence which had been imposed could not thereafter be increased (as the second assistant state attorney's position would do) in violation of defendant's constitutional guaranty not to be twice placed in jeopardy." Id. at 860. Based on the facts of Troupe, it is clear that the trial court's actions were not the result of a mistake or misstatement.