968 So.2d 686 (2007)
Troy L. BLOCKER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-693.
District Court of Appeal of Florida, Second District.
November 16, 2007.
*687 ALTENBERND, Judge.
Troy L. Blocker appeals the summary denial of his motion to correct illegal sentence filed pursuant to Florida Rule of Criminal Procedure 3.800(a). This case presents an extreme example of the difficulties faced by trial courts when a defendant argues that his sentence is illegal because of a discrepancy between the contents of the written transcript of the sentencing hearing and the written sentence. Mr. Blocker's written sentences, rendered in 1989, reflect 99-year sentences for burglary and sexual battery. Those sentences are consistent with the terms of a written negotiated plea agreement that appears to have been signed by Mr. Blocker. The sentences seem appropriate in light of the guidelines scoresheet, which was prepared at the time of sentencing, recommending a life sentence. Mr. Blocker also filed a postconviction motion under oath in 1994 alleging that he had been sentenced to 99 years in prison. Nevertheless, a transcript prepared in 1995 reflects that the trial court orally pronounced sentences of 9 years. The trial court denied Mr. Blocker's motion to correct illegal sentence without an evidentiary hearing, concluding that the 99-year sentences in the written sentences were correct and that the transcript indicating the imposition of 9-year sentences was inaccurate.
In a recent opinion, Williams v. State, 957 So.2d 600 (Fla.2007), the Supreme Court of Florida held that a claim asserting a discrepancy between an oral and written sentence is an "illegal sentence" and as such is cognizable at any time under rule 3.800(a). Id. at 603. In assessing the suitability of rule 3.800(a) to address such claims, the court stated: "We have explained that this procedural rule allows for petition to the courts to correct sentencing errors that may be identified on the face of the record and, because such errors may be resolved as a matter of law, do not require contested evidentiary hearings." Id. at 602. By concluding that such issues may be decided "as a matter of law," the opinion effectively equates the content of the written transcript with the oral pronouncement of sentence. As this *688 case demonstrates, the two may not always be equivalent.
This case is factually distinguishable from Williams because the State has presented documents that reasonably call into question the accuracy of the transcript and present a factual issue as to whether the sentences that were orally pronounced were sentences totaling 9 years or sentences totaling 99 years.[1] Although the issue presented is clearly a question of fact and not one of law, like the trial court we are entirely convinced that the transcript in this case contains an error and that the written sentences do not. We are unwilling to extend the reasoning of Williams to reverse the written sentences in this case. We can devise no method by which the trial court could actually determine in this case which of the written documents is an accurate reporting of the oral pronouncement without conducting an evidentiary hearing. Under these circumstances, the issue presented is a factual one requiring an evidentiary hearing and, thus, is not cognizable under rule 3.800(a).
We conclude that the trial court was entitled to reject Mr. Blocker's claim in this case. We hold that, at least when the State demonstrates a reasonable basis to contest the accuracy of a transcript of a sentencing hearing and thereby creates a disputed question of fact, a conflict between a written sentence and a written transcript is a factual issue that must be resolved under Florida Rule of Criminal Procedure 3.850. Here, that reasonable basis was established by review of the plea form and other sentencing documents of record that support the validity of the written sentences. Because Mr. Blocker is well beyond the two-year time limit for filing a rule 3.850 motion, and because he was present at sentencing to hear the oral pronouncement and his claim does not otherwise involve any newly discovered evidence, this specific claim is time barred.
In light of the ruling in Williams, we certify the following question to the Supreme Court of Florida as a matter of great public importance:
IF A DEFENDANT FILES A POSTCONVICTION MOTION MORE THAN TWO YEARS AFTER THE FINALITY OF HIS SENTENCES ALLEGING A CONFLICT BETWEEN THE SENTENCES STATED IN HIS WRITTEN SENTENCES AND THOSE CONTAINED IN THE WRITTEN TRANSCRIPT, AND IF THE STATE REASONABLY CONTESTS THE ACCURACY OF THE TRANSCRIPT:
(1) MUST THE TRIAL COURT RULE IN FAVOR OF THE DEFENDANT AS A MATTER OF LAW BECAUSE THE TRANSCRIPT CONTROLS THE ISSUE,
(2) MUST THE TRIAL COURT CONDUCT AN EVIDENTIARY HEARING PURSUANT TO RULE 3.800(A) TO DETERMINE WHICH DOCUMENT ACCURATELY REFLECTS THE TRIAL JUDGE'S ORAL PRONOUNCEMENT, OR
(3) MAY THE TRIAL COURT DENY THE MOTION AS AN UNTIMELY *689 REQUEST FOR RELIEF PURSUANT TO RULE 3.850?

I. THE 1989 SENTENCING HEARING AND RESULTING PROCEEDINGS
On February 7, 1989, Mr. Blocker appeared before Judge Crockett Farnell to enter a negotiated plea in three cases, 87-14776, 87-14777, and 87-14778. He was represented by Ronnie G. Crider, and the State was represented by William Loughery. The matter was reported by a court reporter identified as Van Matthews. The court reporter's notes, however, were not transcribed until October 1995. At that time, a transcript was prepared by another court reporter, Eric French, apparently for the earlier postconviction proceeding.
The 1995 transcript reports that Mr. Crider stated that his client "would score to life in prison for these charges." He then reportedly stated: "Pursuant to our earlier discussion and negotiations, the State will agree to allow the Court to sentence Mr. Blocker out of those guidelines to a term of nine years in the Florida State Prison." The transcript then reflects that Mr. Blocker read and understood the "advisement form" (presumably the plea form reflecting a much greater sentence) and was prepared to sign it. The trial court required a factual basis for the convictions in all three cases. The crimes described were all very serious in nature. Thereafter the trial court imposed a single sentence, reportedly stating: "The Court will accept the plea. I will adjudicate the Defendant, sentence him to nine years, Department of Corrections."
In contrast to this transcript, the record contains a plea form signed by both Mr. Blocker and his attorney in which Mr. Blocker agreed to enter a plea of guilty to three counts of burglary, three counts of sexual battery, and dealing in stolen property in exchange for a disposition of "99 yrs. D.O.C." It also contains a guidelines scoresheet prepared on a category 2 scoresheet pursuant to Florida Rule of Criminal Procedure 3.701 and Form 3.988(b) (1987), with points totaling 673. On that scoresheet, Mr. Blocker scored an additional 90 points above the 583 points required for a recommended sentence of life. See Fla. R. Crim. P. Form 3.988(b).
The written judgments and sentences reflect the following: In 87-14776, Mr. Blocker was convicted of a burglary, a first-degree felony punishable by life,[2] and sexual battery, a life felony.[3] For both of these offenses he received written sentences of 99-year terms of incarceration that are concurrent with one another and with the sentences in the other two cases. In 87-14777, Mr. Blocker was convicted of a burglary, a second-degree felony;[4] a second count of burglary, a first-degree felony punishable by life;[5] and two counts of sexual battery, first-degree felonies.[6] For these offenses he received written sentences of 15 years' incarceration for the first burglary, 99 years' incarceration for the second burglary, and 30 years' incarceration for each of the sexual batteries, all concurrent with one another and with the sentences in the other two cases. Finally, in 87-14778, Mr. Blocker was convicted of a burglary, a first-degree felony punishable by life;[7] sexual battery, a life *690 felony;[8] and dealing in stolen property, a second-degree felony.[9] For these offenses he received written sentences of 99 years' incarceration for the burglary and the sexual battery and 15 years' incarceration for dealing in stolen property. Again, these sentences are concurrent with one another and with the sentences in the other two cases. In summary, Mr. Blocker was convicted of four burglaries, four sexual batteries, and one count of dealing in stolen property. He received a total sentence of 99 years. On all felonies that would not permit a term as long as 99 years, the trial court gave Mr. Blocker the maximum term permitted by law. Obviously, this written sentencing structure is far more complex than the unified 9 years' incarceration that is contained in the transcript. There is no record to suggest that Mr. Blocker appealed these judgments and sentences.[10]
In October 1994, Mr. Blocker filed under oath a motion to correct an illegal sentence. In that motion, he alleged that he had "pled guilty pursuant to a plea agreement and the lower tribunal sentenced him to a term of ninety-nine (99) years to be served in the Florida Department of Corrections." He argued in part that the life felonies for which he was adjudicated guilty would not permit sentences in excess of 40 years' incarceration. See § 775.082(3)(a), Fla. Stat. (1987) (providing that a life felony committed after October 1, 1983, is punishable "by a term of imprisonment for life or by a term of imprisonment not exceeding 40 years"). His motion did not seek to withdraw his negotiated plea; rather, he wanted to be resentenced to sentences not exceeding forty years in any of his cases involving life felonies on the theory that those sentences, if longer than 40 years, were illegal.
Mr. Blocker's first motion to correct illegal sentence had a degree of merit, although the victory was Pyrrhic. The trial court reduced the 99-year sentences on each life felony to 40 years, but left the 99-year sentences intact for the burglaries that were first-degree felonies punishable by life. Presumably, the sentencing transcript quoted above was prepared for the purposes of this first postconviction proceeding.
Mr. Blocker commenced this postconviction proceeding in February 2006 by filing a combination petition for habeas corpus and motion to correct illegal sentence. His only claim is that his sentences totaled 9 years as reflected in the transcript. Thus, he served 18 years on sentences that he now claims totaled only 9 years before he sought release. The trial court issued an order to show cause, and the State filed a response. In response, the State argued that the transcript contained a "scrivener's error" and that Mr. Blocker had the burden of proof to show what was actually said in the courtroom. Thereafter, the trial court entered the order on appeal denying relief. The court relied on the plea agreement and the written sentences to conclude that the transcript, not the written sentences, was in error. Further, the postconviction court concluded that Mr. Blocker had conceded the legality of these sentences by filing an earlier rule 3.800(a) motion in which he did not raise any discrepancy between the written and oral sentences despite alleging that he had been sentenced on these counts to 99 years. Finally, the postconviction court *691 determined that Mr. Blocker was barred by laches because he waited seventeen years to raise this issue. The trial court did not conduct an evidentiary hearing.[11]

II. DEFINING "ORAL PRONOUNCEMENT"
It has long been the law that the oral pronouncement of sentence controls over a written sentence. Williams, 957 So.2d at 603 (citing Ashley v. State, 850 So.2d 1265, 1268 (Fla.2003); Justice v. State, 674 So.2d 123, 126 (Fla.1996)); see also Finan v. State, 794 So.2d 623, 624 (Fla. 2d DCA 2001); Patrick v. State, 413 So.2d 474, 475 (Fla. 2d DCA 1982). In many cases, this rule applies when the written sentence contains terms that were not announced in open court as reflected in the written transcript. See, e.g., Yates v. State, 429 So.2d 815 (Fla. 2d DCA 1983). It is not obvious that this rule applies so cleanly in cases in which the transcript itself may contain an error.
Although the case law has often equated the oral pronouncement and the written transcript without discussion, this case is one in which that discussion is warranted. An "oral pronouncement" is, in fact, oral. At the level of physics, it is merely a transitory collection of sound waves. Those vibrations can be recorded in many different ways. For example, advances in digital recording technology may eventually make it easy to determine what was said during a sentencing hearing even generations after the hearing.
In this case, the sound waves were recorded by a court reporter who was probably using typical court reporting technology for 1989. If that reporter had an auxiliary tape recorder, that fact is not revealed in this record. Given that the 1995 transcript was prepared by another court reporter, there is nothing to suggest that the transcript was prepared by any means other than one court reporter reading the paper tape created by another court reporter.
The sound waves were also recorded, at least in summary format, by the court clerk who prepared the judgments and sentences. The multiple judgments and sentences are not discussed in the transcript, and we have no idea how the 99-year written plea agreement for seven felonies resulted in sentences totaling 99 years for nine felonies. There is, however, nothing on the face of any of the judgments and sentences, at least after the correction made in 1995 to the sentences for the life felonies, that would suggest that the sentences are illegal.
Neither of the above-described methods of recording the sounds in the courtroom on February 7, 1989, seems foolproof. Either or both of these methods could have failed in this case or in many other cases in this state. Given the other documents suggesting that the parties anticipated sentences totaling 99 years, we see no reason to elevate the written transcript over the written sentence as the approved recording of the sounds containing the oral pronouncement. In this case, there is clearly a factual dispute as to who is the better historian: the court clerk who prepared the written sentences shortly after the oral pronouncement of sentence, or the court reporter who transcribed the hearing years later from notes created by a different court reporter.
*692 III. UNDER THESE CIRCUMSTANCES, RULE 3.800(A) IS NOT A SUITABLE MECHANISM FOR DETERMINING THE CONTENT OF AN ORAL PRONOUNCEMENT
In the end, the issue in this case is when and by what procedure may a conflict be resolved between the court clerk and the court reporter, as competing legal historians of the sentencing hearing. In Ashley, cited by the supreme court in Williams, 957 So.2d at 603, the supreme court stated: "Generally, the oral pronouncement prevails unless the oral pronouncement is in error due to a clerical error such as the calculation of jail credit." Ashley, 850 So.2d at 1268. In a specially concurring opinion, Justice Pariente observed, "I now recognize that an error in an oral pronouncement cannot be properly labelled as `scrivener's error,'" id. at 1269, but the error in Ashley was an error by the trial judge, not the transcriptionist. The judge apparently intended to sentence Mr. Ashley as a habitual violent felony offender but omitted the word "violent" when announcing the sentence. The majority's language in Ashley therefore suggests that a "clerical error" may occur in the context of an oral pronouncement, which would result in an exception to the rule that the oral pronouncement controls. Indeed, in Williams, the supreme court appears to acknowledge that a discrepancy between an oral pronouncement and a written sentence may sometimes require further explanation before a court accepts the oral pronouncement as the proper sentence. 957 So.2d at 605 n. 2 (noting the trial court may direct the state to respond to such an allegation so that the state "may have an opportunity to explain any apparent discrepancy before the matter is adjudicated").
In this case, the State's position is that the judge did not misspeak, but that the court reporter was inaccurate. A court reporter's error in a transcript is akin to those errors we consider to be scrivener's errors when made in the records of a court by the mistake of a court employee.
At least on direct appeal, there are cases in which a possible error in the transcript of the sentencing hearing has resulted in a remand to the trial court to determine whether the written sentence or the transcript reflected the true oral pronouncement. See, e.g., Enchautegui v. State, 749 So.2d 550 (Fla. 2d DCA 2000); Manual v. State, 547 So.2d 726 (Fla. 2d DCA 1989); Gonzales v. State, 488 So.2d 610 (Fla. 4th DCA 1986), disapproved of on other grounds in Frey v. State, 708 So.2d 918, 920 n. 3 (Fla.1998); Robinson v. State, 407 So.2d 1038 (Fla. 1st DCA 1981). It is not so obvious, however, that such relief should be granted in a postconviction proceeding filed many years after the sentencing hearing.
The only way to actually determine whether both Mr. Blocker's attorney and the trial judge said "9" or "99" would be to take testimony from people in the room on February 7, 1989, or perhaps to find a tape recording from the court reporter's files. Obviously, the passage of time will affect the availability and quality of any such evidence. Indeed, if this were a civil claim on an oral contract it would have been barred by the statute of limitations many years ago. It is worth noting that the sentences do not depart from the written contract contained within the negotiated plea.[12]
*693 In order for a sentence to be "illegal" for purposes of correction under rule 3.800(a) at any time, the claim must be resolvable as a matter of law without an evidentiary determination, see State v. Callaway, 658 So.2d 983, 988 (Fla.1995), receded from on other grounds in Dixon v. State, 730 So.2d 265 (Fla.1999). Most of the distinctions between a motion for relief under rule 3.850 and rule 3.800(a) would seem to collapse if defendants were allowed to allege and resolve factual disputes under rule 3.800(a) concerning the statements of judges and other parties at a sentencing hearing.[13]
Although Williams recognizes that a discrepancy between a written sentence and a transcript may constitute an "illegal sentence" as that term is defined for purposes of rule 3.800(a), this case demonstrates that such a discrepancy is not always resolved on the face of the record. Certainly, in cases where the defendant establishes a discrepancy on the face of the record as set forth in Williams and the State either concedes or fails to allege an error in the sentencing transcript, such an error may be subject to correction, as a matter of law, at any time under rule 3.800(a).
As noted in Williams, however, such a discrepancy is sometimes subject to explanation. 957 So.2d at 605 n. 2. As such, the State is entitled to respond to a rule 3.800(a) motion alleging a discrepancy. If the State provides, or if the trial court's review of the record reveals, a reasonable basis to believe that the discrepancy in the transcript and the written sentencing documents presents a factual issue as to the court's oral pronouncement of sentence, the matter cannot be resolved by rule 3.800(a).
We conclude that the executed plea agreement and sentencing scoresheet provide the reasonable basis in this case to conclude that a factual question exists regarding the court's oral pronouncement. At this time, we do not need to decide, however, what a reasonable basis would be in other contexts or whether the trial court would have authority to reject a claim by the State that it had a reasonable basis to contest the accuracy of a transcript. In most cases, it would seem that the State could produce some documentation other than a bald assertion to support a claim of transcription error.
We recognize that, at least in theory, a state attorney could contest a claim that a written sentence did not comport with the oral pronouncement for the purpose of enforcing an erroneous written sentence. This court is inclined to believe that the state attorneys within this district, both as *694 officers of the court and as constitutional officers, would not abuse their power in that fashion. We believe that they would feel honor-bound to concede any clear error or injustice in the sentencing process.
There is every reason to believe that the written sentence in this case is accurate, and the transcript is in error. We conclude that such postconviction disputes can be resolved only after an evidentiary hearing and, thus, by a motion filed pursuant to rule 3.850.

IV. THE RIGHT RESULT
We conclude that the trial court correctly denied relief in this case. The matter, after the response from the State, was a contested issue of fact that could not be resolved under the procedures of rule 3.800. Given that the motion had not been filed within two years from the finality of the judgments and sentences, or even within two years from the preparation of the transcript in 1995, there was no question that this motion was untimely if treated as a motion pursuant to rule 3.850 and that it had no possibility of being amended to cure this problem. Accordingly, the trial court should have denied the motion explaining that it was not cognizable under rule 3.800(a). To the extent that the trial court purported to decide a contested issue of fact in its order without an evidentiary hearing, that reasoning was incorrect.
Accordingly, we affirm the denial of the motion and certify the earlier presented question to the Supreme Court of Florida.
Affirmed; question certified.
KELLY, J., Concurs in result only.
DAVIS, J., Concurs with opinion.
DAVIS, Judge, Concurring.
I fully concur with the majority opinion. However, I write to express the concern that by carving out this exception to Williams, 957 So.2d 600, the movant is placed at a serious disadvantage. If an individual files a rule 3.800(a) motion pursuant to Williams, alleging a discrepancy between the written sentence and the oral pronouncement, and attaches a copy of the transcript of the sentencing proceeding, his challenge may be considered at any time. However, should he make such a challenge after the expiration of the two-year limit imposed by rule 3.850, upon the mere suggestion of the inaccuracy in the transcript by the State, his motion must be deniedeven without the State's suggestion being tested. Because a hearing is not allowed by rule 3.800(a), whether the transcript is accurate cannot be factually determined, and the movant is left without a vehicle to seek relief.
Accordingly, I concur with the result and write to warn the potential movant not to assume that all challenges to sentences based on written/oral discrepancies are necessarily cognizable under rule 3.800(a).
NOTES
[1] Indeed in Williams, by the time the matter was resolved in the supreme court, the issue was moot because further action had revealed that Mr. Williams was mistaken and no conflict between the oral pronouncement of the sentence and the written sentence existed. 957 So.2d at 601. The court proceeded to decide the issue of whether such a discrepancy results in an "illegal sentence" for purposes of rule 3.800(a) because it concluded the question was one of great public importance and had engendered conflicting decisions in the district courts.
[2] See § 810.02(2), Fla. Stat. (1987).
[3] See § 794.011(3), Fla. Stat. (1987).
[4] See § 810.02(3).
[5] See § 810.02(2).
[6] See § 794.011(4)(b).
[7] See § 810.02(2).
[8] See § 794.011(3).
[9] See § 812.019(1), Fla. Stat. (1987).
[10] This court has record of only one prior proceeding involving Mr. Blocker, a petition for mandamus that was denied. Blocker v. Circuit Court, Sixth Judicial Circuit, 666 So.2d 148 (Fla. 2d DCA 1995).
[11] We note that The Florida Bar's records currently indicate that the judge who presided over the entry of Mr. Blocker's plea and the two lawyers who participated in the same are still alive and reside in the local community. Presumably they could have been subpoenaed to determine their recollection, if any, of the matter. After all these years, this circumstance may be the exception rather than the rule.
[12] The existence of a written plea agreement that conflicts with Mr. Blocker's allegations also militates against providing relief pursuant to rule 3.800(a). Generally, a defendant seeking correction of his sentence in contravention of a plea agreement must seek to withdraw his plea pursuant to Florida Rule of Criminal Procedure 3.850, thus providing the State the opportunity to also withdraw from the agreement if it objects to the resentencing. See, e.g., Sidell v. State, 787 So.2d 139 (Fla. 2d DCA 2001).
[13] We recognize that, at least in this district, the procedure for rule 3.800(a) occasionally requires a very limited evidentiary determination. We allow a defendant to challenge a habitual offender sentence at any time on the allegation that the predicate offenses for such sentencing do not exist. See, e.g., Judge v. State, 596 So.2d 73 (Fla. 2d DCA 1991). We have not limited that claim to circumstances in which the offenses do not exist within the defendant's individual court file because that could be an unwarranted windfall for the defendant. Instead, we allow the defendant to make such a claim, but we permit the State to disprove the claim by presenting certified copies of prior judgments that exist within public records. These public documents are essentially self-proving and do not require testimony from witnesses about their recollection of prior events. Whether our practice fulfills the holding in Bover v. State, 797 So.2d 1246 (Fla.2001), or conflicts with it has never been squarely resolved. In any event, we believe such a limited evidentiary issue is far different from determining what a judge did or did not say in a courtroom many years ago.