ALTENBERND, Judge.
Michael Eugene Akins appeals an order in a postconviction proceeding that denied his motion to correct an illegal sentence. Since his original sentence in 1991, he has filed more than thirty such appeals. Nevertheless, the argument that he raises is supported by Ashley v. State, 850 So.2d 1265 (Fla.2003), and Evans v. State, 675 So.2d 1012 (Fla. 4th DCA 1996), as well as by discussion in this court’s opinion in Barron v. State, 827 So.2d 1063 (Fla. 2d DCA 2002), and by the outcome in White *61 v. State, 892 So.2d 541 (Fla. 1st DCA 2005). Although we disagree with at least part of the analysis in Evans, it was approved by the supreme court in Ashley. We are not convinced that we can distinguish these cases. Accordingly, we reverse the order on appeal and hold that Mr. Akins’ sentence is illegal because the trial judge inadvertently failed to announce that the sentence imposed on violation of probation remained a habitual offender sentence. At the conclusion of this opinion, we certify a question to the Florida Supreme Court.
I.
When Mr. Akins was sentenced in 1991 for a sale of cocaine that occurred in 1990, he was designated a habitual felony offender. As a result, the maximum legal sentence he could receive for this second-degree felony was thirty years’ imprisonment. See §§ 775.084(4)(a)(2), 89S.13(l)(a)(l), Fla. Stat. (1989). The trial court imposed a true split sentence of thirty years’ imprisonment, suspended after twenty years, with the remainder of the sentence served on probation. No one argues that the sentence imposed in 1991 was incorrect, unlawful, or illegal.
After approximately twelve years in prison, Mr. Akins was released in early 2003 to serve the remainder of his sentence on probation. Thus, he had received gain time or other credits allowing him to be released approximately eight years earlier than the full twenty-year term of imprisonment.
Mr. Akins violated his probation in 2004.[1] He admitted the violation in November 2004. As a result, the trial court had the option of revoking his probation and sentencing him to prison for the remaining term of the true split sentence. The trial judge realized that any new sentence would cause a substantial loss of gain time for Mr. Akins. The trial court did not wish to impose a term of imprisonment that could result in Mr. Akins serving another eighteen years in prison. Accordingly, after a lengthy discussion of jail credit and other issues, the trial court imposed a sentence of five years’ imprisonment with no term of probation thereafter.
During this discussion, no one suggested that Mr. Akins did not retain his status as a habitual offender. It is obvious that the judge and both lawyers were working on the assumption that Mr. Akins retained his status as a habitual offender and they were trying to ameliorate the severity of the true split sentence for Mr. Akins’ benefit. Nevertheless, when the trial court finally announced the sentence of five years’ imprisonment, it did not orally announce that the earlier determination that Mr. Akins qualified and would be sentenced as a habitual offender remained the status of his case.
When the sentence on revocation was reduced to writing, it did not indicate that Mr. Akins was serving his sentence as a habitual felony offender. In 2005, Mr. Akins challenged the calculation of jail credit in his new sentence. While adding additional jail credit to benefit Mr. Akins, the court added language explaining that the sentence was imposed as a habitual felony offender sentence. Since that clarification, Mr. Akins has attempted to convince the courts that his “guidelines” sentence imposed upon revocation of probation in 2004 could not lawfully be transformed into a habitual offender sentence in 2005.
*62 II.
As explained later in this opinion, this court and the trial court have previously assumed that Mr. Akins’ issue was not a double jeopardy issue because he was declared to fall within the status of a habitual offender when his original true split sentence was imposed. In light of the holding in Evans v. State, 675 So.2d 1012 (Fla. 4th DCA 1996), which was approved by the supreme court in Ashley v. State, 850 So.2d 1265 (Fla.200S), we conclude that we must treat the modification of the sentence in 2005 as a violation of double jeopardy.
In Evans, the defendant received a forty-year term of imprisonment as a habitual offender in 1993. 675 So.2d at 1013. That sentence was fully suspended, and he was placed on probation. In other words, he appears to have received a true split sentence with no initial time in prison. When the defendant violated his probation, similar to this case, there was a hesitancy to give the defendant a full forty-year term of imprisonment. Thus, the court expressly vacated the true split sentence and resen-tenced the defendant to a total of twenty years in prison. Id. During that resen-tencing, the court did not announce that the sentence was imposed under the defendant’s status as a habitual offender. Id. at 1014. Two days later, the defendant was returned to court, and the court attempted to clarify that the twenty-year sentence was imposed as a habitual offender sentence. Id. On appeal, the Fourth District recognized that the failure to state that the defendant remained a habitual offender was probably a mere oversight, but it nevertheless ruled that it was “unequivocally a violation of double jeopardy.” Id.
In Ashley, the supreme court considered a case in which there was an inadvertent failure to announce a defendant’s status as a habitual violent felony offender during his initial sentencing. 850 So.2d 1265. The case did not involve a violation of probation. Nevertheless, the supreme court concluded that the First District’s opinion[2] conflicted with the Fourth District’s decision in Evans. 850 So.2d at 1267. The supreme court quashed the First District’s decision in Ashley, relying on the analysis in Evans. Id. at 1267-69.
We have considered whether we can distinguish Evans because the defendant in that case had not already served a term in prison as a habitual offender and had only been on probation. Evans may also have involved a more formalized abandonment of the earlier true split sentence. In light of the supreme court’s decision that Evans conflicted with the First District’s opinion in Ashley, we conclude that we cannot distinguish Evans from this case.
Accordingly, we hold that the sentence entered in 2005 violated double jeopardy and is an illegal sentence. On remand, the trial court must resentence Mr. Akins. Whether the trial court may just reimpose the five-year term of imprisonment without the habitual offender status or must impose a lesser sentence so that the total of the prior prison time actually served and the new sentence does not exceed fifteen years in prison is unclear. It would appear to us, however, that the issue of what legal sentence to impose on remand is sufficiently complex that the trial court would be well advised to conduct a hearing and appoint counsel to assist Mr. Akins.
III.
But for the decisions in Ashley and Evans, we would think that Mr. Akins’ issue distills down to the question of whether a defendant’s habitual offender status in a specific case, once determined and relied *63 upon for the imposition of an extended split sentence, must be orally redetermined and reannounced at any subsequent sentencing on violation of probation. His status as a habitual offender would not appear to us to be a matter that would require redetermination at a proceeding on a violation of probation.
Under the applicable sentencing law in 1991, “habitual felony offender” was a defined status that permitted the trial court to sentence the defendant to “an extended term of imprisonment.” § 775.084(l)(a). The habitual felony offender status was then, and remains now, a distinct determination by the trial court that takes place after the jury’s verdict and prior to the imposition of sentence. Although the proceeding is often resolved as part of the sentencing hearing, this determination technically occurs “[i]n a separate proceeding,” governed in part by procedures specific to such proceedings. § 775.084(3). Once a defendant is designated to fall within this status, his or her sentence can be essentially doubled in length. See § 775.084(4).
It has long been established that a sentence of imprisonment as a habitual offender can be suspended after a term of years and replaced with a term of probation. In other words, one’s status as a habitual offender does not prohibit the trial court from imposing a split sentence. See McKnight v. State, 616 So.2d 31 (Fla. 1993); Allen v. State, 599 So.2d 996 (Fla. 1992) (holding that maximum sentences in habitual felony offender statutes are permissive, affirming split sentence). Mr. Akins is arguing that when a trial court revokes probation in such a case, the revocation also rescinds the earlier determination that the defendant is a habitual felony offender for whom an extended sentence is warranted. We find nothing in the relevant statutes that supports this theory.[3] Once the trial court has determined that a defendant qualifies as a habitual felony offender and has announced a split sentence pursuant to that determination, we would think that the defendant’s status as a habitual felony offender subject to an extended sentence remained his status without need of additional determinations or announcements at later proceedings. While the defendant might better understand the sentence if the trial court explained that the defendant remained a habitual offender, it is not entirely clear to this court why double jeopardy requires the trial court to repeat this predicate determination for the sentence imposed on violation of probation any more than the judge would have an obligation to repeat the earlier announcement of adjudication on the conviction. In addition to Ashley and Evans, we recognize that the First District, in White v. State, 892 So.2d 541, 542 (Fla. 1st DCA 2005), held that “[t]o effectuate a habitual felony offender sentence upon revocation of probation, a trial court must orally pronounce habitual felony offender status, even when the appellant was initially sentenced as a habitual felony offender for the substantive offense and the designation has not been set aside.” This court reached a similar outcome in Barron v. State, 827 So.2d 1063 (Fla. 2d DCA 2002).
*64 This issue in this case appears most similar to that which arose with a split sentence in Mann v. State, 851 So.2d 901 (Fla. Sd DCA 2003). In Mann, the defendant was designated a habitual violent felony offender at the original sentencing. Id. at 902. When he violated his probation, the court orally imposed his sentence on violation of probation as a “habitual offender” sentence, omitting the word “violent.” Id. The trial court thereafter entered a written sentence retaining the defendant’s status as a habitual violent felony offender. Id. Thus, in Mann, the issue was not a scrivener’s error, but rather a slip of the tongue by the trial judge. Id. at 903. The Third District held that the defendant’s status was not altered by this omission and that considerations of double jeopardy did not prevent the sentence from being treated as a sentence imposed under the status of habitual violent felony offender. Id. We would follow this case, but we are not convinced that it is consistent with Evans.
It seems to this court that the determination of a status such as habitual felony offender or habitual violent felony offender, in many ways, is not a portion of either the proceedings resulting in an adjudication of guilt or the proceedings resulting in a sentence. Although this status determination often occurs at the hearing scheduled for sentencing, it is a predicate decision based on fact and law that is distinct from either the adjudication or the sentence. For purposes of double jeopardy, once this status has been formally determined and the trial court has announced that it will rely on this status for purposes of imposing a split sentence, we do not entirely understand why the trial court violates double jeopardy when it relies on that determination and announcement without repeating it at a sentencing on revocation of probation.
The issue in our case is not identical to that in Ashley and our holding appears to conflict with Mann. Given that we would not wish an inadvertent omission at sentencing to be given the sanctity of constitutional protection unless required by binding precedent, we certify the following question of great public importance:
IF A DEFENDANT HAS BEEN DECLARED TO BE A HABITUAL OFFENDER BEFORE THE IMPOSITION OF HIS INITIAL SPLIT SENTENCE, WHEN THE DEFENDANT LATER VIOLATES PROBATION AND HAS HIS PROBATION REVOKED, DOES THE DEFENDANT LOSE HIS STATUS AS A HABITUAL OFFENDER IF THE TRIAL COURT DOES NOT REPEAT THIS STATUS AT THE SENTENCING HEARING ON VIOLATION OF PROBATION?
Reversed and remanded.
VTLLANTI and WALLACE, JJ., Concur.

. The transcript of the sentencing hearing in 2004 indicates that he violated probation on an earlier occasion between 2001 and 2004 and received an extension rather than a revocation of probation.

. Ashley v. State, 772 So.2d 42 (Fla. 1st DCA 2000), quashed by 850 So.2d 1265 (Fla.2003).

. We recognize that the initial trial judge can determine that a defendant qualifies for habitual felony offender treatment but decline to impose a habitual offender sentence. See King v. State, 681 So.2d 1136 (Fla.1996), receded from on other grounds by Carter v. State, 786 So.2d 1173 (Fla.2001). Just as a subsequent judge cannot impose a habitual offender sentence on violation of probation after the initial judge imposed a guidelines sentence, we would think that a subsequent judge by his or her silence could not transform a defendant’s habitual offender sentencing into sentencing under the guidelines.