ALTENBERND, Judge,
Dissenting.
I dissent. I am not certain whether we are holding that Mr. Gardner is entitled to the eight-year term of imprisonment, even though it is illegal, or that he is entitled to receive this sentence subject to the State’s right to have that sentence reversed in a subsequent appeal.
Although I dissent, I recognize the possibility that my disagreement is actually a disagreement with either the holding in Ashley v. State, 850 So.2d 1265 (Fla.2003), or the case law applying it. Ashley holds that “[o]nce a sentence has been imposed and the person begins to serve the sentence, that sentence may not be increased without running afoul of double jeopardy principles.” Id. at 1267. The courts of Florida have interpreted this holding very strictly. Once the sound waves from the judge’s oral pronouncement have reached the court reporter’s ears or the microphone of the digital recording device, we seem to think that the defendant has begun to serve the sentence. At a minimum, once the defendant’s sentencing hearing has concluded, we rule that he is serving the sentence even when the oral pronouncement has not been rendered by a written sentence. I am not convinced that a defendant who sits in the courthouse during the lunchtime between an initial illegal sentencing and a resentencing has begun to serve the illegal sentence for purposes of a constitutional double jeopardy analysis.
Mr. Gardner went to a sentencing hearing having agreed to a maximum prison sentence of ten years’ imprisonment.[3] As explained by the majority opinion, the trial court initially imposed a sentence that did not include the mandatory term, and after a short lunch break, the trial court corrected this error. Mr. Gardner filed a motion for rehearing, but when he received no relief, he did not appeal. Instead, almost two years later, Mr. Gardner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.
Legally, the trial court was required to sentence the defendant pursuant to the express terms of the statute to the ten-year minimum term. The original sentence, which included a downward departure rather than the minimum mandatory term, was an erroneous sentence. See State v. Calzada-Padrón, 708 So.2d 287 (Fla. 2d DCA 1996); see also Beard v. State, 819 So.2d 987 (Fla. 2d DCA 2002) (affirming imposition of the minimum mandatory portion of a life sentence, as automatic, upon resentencing after remand of direct appeal); Van Burén v. State, 500 So.2d 732 (Fla. 2d DCA 1987) (holding that efforts to correct unlawfully lenient sentences are not per se violative of double jeopardy proscriptions and that double jeopardy arises only when efforts are undertaken to increase a sentence that was legal when originally imposed). Both the First and Fifth Districts have held that resentencing to impose minimum mandatory terms is required where the original sentences fail to include the nondiscretion-ary terms. See State v. Vanderhoff, 14 So.3d 1185 (Fla. 5th DCA 2009); State v. Couch, 896 So.2d 799 (Fla. 1st DCA 2005). Thus, unless the State has forever waived the right to obtain the mandated sentence *634 by failing to note this error before the hearing concluded, the original sentence was subject to reversal on appeal by the State and may also be subject to reversal when imposed on remand from this appeal.
In Deísmos v. State, 969 So.2d 544 (Fla. 2d DCA 2007), I suggested that the Florida law on the issue of when a sentence becomes final for purposes of double jeopardy may be overly restrictive and that the U.S. Constitution may permit a longer window of time in which courts could correct errors made during oral pronouncement. I continue to believe that our case law does not reflect the extent to which simple human error is inevitable in oral pronouncements and that the constitutional doctrine of double jeopardy was never intended to make sentencing a game in which mental errors by judges and attorneys are irreparable even when the error is discovered minutes later. See United States v. DiFrancesco, 449 U.S. 117, 135, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (quoting Bozza v. United States, 330 U.S. 160, 166-67, 67 S.Ct. 645, 91 L.Ed. 818 (1947), for the principle that “[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner”).
In other jurisdictions, the defendant’s being taken into custody by the Department of Corrections or, at a minimum, the transfer of custody from the judiciary to the executive, is the point at which the defendant begins to serve the sentence, and the trial court loses its authority to resentence. See People v. Mendoza, 171 Cal.App.4th 1142, 90 Cal.Rptr.3d 315, 320-21 (2009) (holding that upon receipt of the judgment by the sheriff, the execution of the judgment is in progress); State v. Carr, 167 Ohio App.3d 223, 854 N.E.2d 571, 573 (2006) (holding that the execution of a sentence begins when the defendant is delivered to the institution where the sentence is to be served); State v. Jacobs, 200 OrApp. 665, 117 P.3d 290, 296 (2005) (holding a prison sentence is not executed until the defendant is delivered to the custody of the Department of Corrections); Maher v. State, 991 P.2d 1248, 1249 (Wyo. 1999) (holding that the relevant inquiry in deciding whether a defendant has begun serving a sentence is whether the defendant has been delivered to executive custody for that purpose); Francis v. United States, 715 A.2d 894, 898 n. 12 (D.C.1998) (“[T]he Double Jeopardy Clause is inapplicable absent a transfer of a convicted individual from the judiciary, which pronounced sentence, to the executive, which administers it.”).
So long as a trial judge is not exercising his or her discretion to increase the severity of the overall sentence that the trial judge intended to impose at the oral pronouncement, I believe we could and should have a procedural mechanism by which trial judges are allowed to correct misstatements and confusions in sentences and to impose mandated sentencing conditions that were overlooked at oral pronouncement. When a judge inadvertently imposes a fifteen-year sentence on a third-degree felony and a five-year sentence on a second-degree felony, for example, I do not understand why constitutional double jeopardy should bar the judge from imposing the intended fifteen-year sentence for the second-degree felony even a few days after the mistake in the oral pronouncement.
A defendant has a right to a legal sentence. This defendant is about to receive the benefit of an illegal sentence, in all likelihood because a judge and several lawyers were anxious to go to lunch. Somehow, Florida’s technical approach to double jeopardy allows inadvertent mistakes to give defendants the right not to legal *635 sentences, but to sentences that are often more like half jeopardy.

. There may have been ineffective assistance of counsel in this case because it does not appear that Mr. Gardner understood that the trial court had no discretion and was compelled to impose a ten-year sentence.