753 So.2d 1 (1999)
STATE of Florida, Petitioner,
v.
Luis Manuel ESTEVEZ, Respondent.
No. 93,467.
Supreme Court of Florida.
November 24, 1999.
Robert A. Butterworth, Attorney General, and Maya Saxena, Assistant Attorney General, Fort Lauderdale, Florida, for Petitioner.
Bennett H. Brummer, Public Defender, and Maria E. Lauredo, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida, for Respondent.
ANSTEAD, J.
We have for review Estevez v. State, 713 So.2d 1039 (Fla. 3d DCA 1998), based upon the following certified question of great public importance:
DOES THE ABSENCE OF A SPECIFIC FINDING BY THE JURY ON THE VERDICT FORM THAT THE DEFENDANT IS GUILTY OF COCAINE TRAFFICKING IN AN AMOUNT OF 400 GRAMS OR MORE, IN THE FACE OF UNCONTROVERTED EVIDENCE THAT THE AMOUNT AT ISSUE EXCEEDED 400 GRAMS, PRECLUDE IMPOSITION OF A MINIMUM MANDATORY SENTENCE UNDER SECTION 893.135?
*2 We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the following reasons, we answer the certified question in the affirmative and approve the decision of the district court.

PROCEEDINGS TO DATE
Respondent, Luis Manuel Estevez, was charged by information with trafficking in cocaine in excess of 400 grams and with conspiracy to traffic in cocaine. Under the provisions of section 893.135, Florida Statutes (1995), the trafficking statute, it is unlawful to possess twenty-eight grams or more of cocaine. In addition, the mandatory minimum sentences to be imposed under the statute are dependent upon the amount of cocaine involved. The statute mandates a fifteen-year minimum sentence if the amount involved exceeds 400 grams.
At Estevez' trial, evidence was presented of his violation of section 893.135 and that the amount of cocaine involved exceeded 400 grams. Before the jury retired for deliberations, the court discussed the proposed verdict form with the parties and the jury. The proposed form contained a space for the jury to indicate that it found the defendant guilty of trafficking in cocaine as charged in the information, and alternatively, a space for the jury to indicate that it found the defendant not guilty of that charge.[1] In addition, the form contained a line where the jury could indicate that "the defendant is guilty of cocaine trafficking," followed by several specific categories as to the amount of cocaine involved and a space next to each for the jury to indicate its finding as to the amount.
After conferring with both parties, the trial judge crossed out "the defendant is guilty of cocaine trafficking" language, and explained to the jury that the form should now be easier to understand, while reminding the jurors that they still had to find the amount of cocaine involved by checking one of the choices provided:
What the attorneys and I just did, we went over there and it [jury instruction] didn't read well. And we crossed out one sentence to make it easier for you to understand.
Count one reads:
We the jury find as follows: The defendant in this case, and check on one of two things. The defendant is guilty of Trafficking in Cocaine. That's Count One in the information. Or the defendant is not guilty. Those are the two choices here.
And now if you believe that he is guilty of Trafficking in Cocaine as charged, then you will check A., more than four hundred grams, or B. more than two hundred grams, but less than four hundred grams, or C. more than twenty-eight grams but less than two hundred grams; or D.,less than twenty-eight grams, and then E., the defendant is found guilty of attempted trafficking in cocaine as a lesser included charge.[2]
After deliberations, the jury returned a verdict finding Estevez guilty of trafficking in cocaine as charged in the information and not guilty of conspiracy to traffic. The verdict form reflects that although the jury checked off the space indicating "guilty of trafficking in cocaine as charged," it did not check on the verdict form the amount of cocaine involved.
A different judge than the one who presided at trial received the jury's verdict.[3] The substitute judge accepted the verdict and discharged the jury. Shortly thereafter, during sentencing discussions between the judge and the attorneys, defense counsel *3 examined the verdict form and discovered that the jury had not indicated on the verdict form the amount of cocaine involved in the offense. However, over defense counsel's objection, and despite the lack of an express jury finding as to the amount of cocaine involved, the judge sentenced Estevez to serve a fifteen-year mandatory minimum term for trafficking in cocaine in excess of 400 grams.
On appeal, the Third District reversed and held that "[b]efore a defendant can be subject to a minimum mandatory sentence pursuant to section 893.135(1)(b), the verdict form must contain a finding that the defendant committed the crime prohibited by the minimum mandatory sentencing statute." Estevez, 713 So.2d at 1040 (citing State v. Tripp, 642 So.2d 728 (Fla. 1994); State v. Overfelt, 457 So.2d 1385 (Fla.1984); and Streeter v. State, 416 So.2d 1203 (Fla. 3d DCA 1982)). Concluding that it could not determine whether the jury had exercised its inherent power to pardon the defendant by failing to make a specific finding as to the amount of cocaine, the court "reluctantly reversed" the mandatory minimum sentence and remanded for imposition of a guidelines sentence. See id. However, concerned about the uncontroverted evidence of the amount of cocaine involved in the instant case, the Third District certified the aforementioned question of great public importance to this Court. See id.

ANALYSIS
The defendant here was charged with violating section 893.135(1)(b)(1), Florida Statutes (1995). It provides:
Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine, as described in § 893.03(2)(a)(4)., or of any mixture containing cocaine, but less than 150 kilograms of cocaine or any such mixture, commits a felony of the first degree, which felony shall be known as "trafficking in cocaine." If the quantity involved:
a. Is 28 grams or more, but less than 200 grams, such person shall be sentenced pursuant to the sentencing guidelines and pay a fine of $50,000.
b. Is 200 grams or more, but less than 400 grams, such person shall be sentenced pursuant to the sentencing guidelines and pay a fine of $100,000.
c. Is 400 grams or more, but less than 150 kilograms, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years and pay a fine of $250,000.
We begin our analysis by recognizing that this Court has expressly held that the jury is the fact finder charged with the obligation of determining the quantity of cocaine involved in cocaine trafficking under this statute. See State v. Weller, 590 So.2d 923, 927 (Fla.1991).
In Weller, we explained:
In this review, Weller also argues that the trial court erred in refusing to instruct the jury on all three of the trafficking offenses that involve twenty-eight or more grams of cocaine. At first blush, we would be inclined to disagree, since all of these offenses are first-degree felonies. We previously have stated that offenses are not "lesser" if they carry the same penalty. State v. Carpenter, 417 So.2d 986 (Fla.1982). Yet, we are constrained to find error here, because the three offenses in question carry different minimum penalties, despite their shared status as first-degree felonies. As noted earlier, Florida law provides for a greater mandatory minimum sentence and a greater fine, determined by the quantity of the substance involved in the offense. Compare § 893.135(1)(b) with § 893.135(4), Fla. Stat. (1983). In other words, the two offenses of conspiring to traffic in amounts less than 400 grams are necessarily lesser included offenses of the crime with which Weller was charged.

*4 Thus, before the trial court can impose sentence on a defendant when enhancements of this type are authorized, the trial court must inform the jury that the minimum mandatory punishment for the offense is greater depending upon the quantity of the substance involved. The jury then must determine from the evidence adduced at trial the quantity of contraband involved in the commission of the offense, in effect advising the court as to the appropriate minimum penalty.

Thus, the requested instructions on the amounts less than 400 grams should have been given so the appropriate minimum mandatory sentence could have been imposed, based on the jury's determination of the amount of cocaine involved. The trial court erred in determining otherwise.
590 So.2d at 927 (footnote omitted) (emphasis added). Under our analysis in Weller, the jury's factual finding on the quantity of cocaine involved controls the minimum sentence that may be imposed. Imposition of a mandatory minimum sentence under section 893.135 is improper when a jury does not determine the specific quantity of cocaine involved. See id.; Rickman v. State, 642 So.2d 846, 846 (Fla. 4th DCA 1994).
In resolving this issue, the district court found it instructive to refer to this Court's line of cases interpreting section 775.087, Florida Statutes, dealing with the reclassification and minimum sentence imposition for crimes involving the possession or use of a weapon or firearm.[4] Our cases interpreting section 775.087 have required a specific jury finding that a defendant used a firearm or weapon in the commission of an offense before a trial court may enhance the defendant's sentence or apply a mandatory minimum sentence for the defendant's use of a firearm or weapon in the commission of the offense. See Tucker v. State, 726 So.2d 768 (Fla.1999); State v. Hargrove, 694 So.2d 729, 730 (Fla.1997); State v. Tripp, 642 So.2d 728 (Fla.1994); State v. Overfelt, 457 So.2d 1385, 1386 (Fla. 1984). In this line of cases, we expressly rejected the proposition that a jury finding as to the presence of a firearm is not required where the evidence on that issue is not controverted at trial.

THIS CASE
In the instant case, the State argues that when the evidence as to quantity is uncontroverted, the jury should not be allowed to "pardon" the defendant by failing to make a specific finding as to the amount of cocaine involved. The State points out that this Court acknowledged in State v. Benitez, 395 So.2d 514, 516-17 (Fla.1981), the mandatory nature of section 893.135, which only allows the trial judge to deviate from the statute's mandatory minimum sentences under circumstances where the defendant is willing to cooperate with law enforcement authorities in apprehending other drug traffickers. Importantly, however, while section 893.135 limits a trial judge in sentencing once a specific conviction is secured, none of its provisions obviates the jury's inherent power to "pardon" a defendant by convicting the defendant of a lesser offense. See, e.g., Amado v. State, 585 So.2d 282, 283 (Fla.1991); Potts v. State, 430 So.2d 900, 903 (Fla.1982); State v. Abreau, 363 So.2d 1063, 1064 (Fla.1978); Date v. *5 State, 528 So.2d 547, 547-48 (Fla. 3d DCA 1988).
Further, as noted above, we have expressly rejected the same argument when advanced in firearm possession cases. For example, in Hargrove, the Fourth District, much like the Third District here, "reluctantly reversed" the imposition of a mandatory minimum sentence. See 694 So.2d at 730. Noting that it could not understand the necessity for a jury finding of "use of a firearm" in a case where the defendant made no attempt to deny the shooting alleged in the information, the Fourth District certified a question which this Court rephrased as follows:
WHEN A DEFENDANT CHARGED WITH COMMITTING A CRIME WITH THE USE OF A FIREARM DOES NOT CONTEST ITS USE AND INSTEAD DEFENDS ON THE GROUND THAT HE WAS INSANE WHEN HE USED THE FIREARM, AND THE RECORD IS CLEAR BEYOND ANY DOUBT THAT DEFENDANT DID ACTUALLY USE THE FIREARM, MAY THE SENTENCING JUDGE IMPOSE THE MANDATORY MINIMUM SENTENCE FOR USE OF A FIREARM WITHOUT A SPECIFIC FINDING OF THAT FACT BY THE JURY?
Id. On review, answering the certified question in the negative and approving the reversal of the mandatory sentence, this Court held:
Our decision in Overfelt encompasses cases where the evidence of use of a firearm is unrebutted. There must be a specific finding by the jury. Even where the use of a firearm is uncontested, the overriding concern of Overfelt still applies: the jury is the fact finder, and use of a firearm is a finding of fact. If the State wishes to guard against the recurrence of a situation such as in the instant case, it is in a position to do so: it has the right to propose an interrogatory on the verdict form asking whether or not the jury finds the defendant guilty of a crime involving use of a firearm.
Id. at 730-31. The Court further noted that the clearest way for the jury to make the necessary finding that a firearm was used is to have a specific question or special verdict form. See id. at 731. In Tucker, we reiterated Hargrove's finding and held that "an enhanced sentence should be upheld if based on a jury verdict which specifically refers to the use of a firearm, either as a separate finding or by the inclusion of a reference to a firearm in identifying the specific crime for which the defendant is found guilty." 726 So.2d at 772.
Recently, in Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the United States Supreme Court interpreted the federal carjacking statute to require separate jury findings under a penalty scheme similar to that involved herein. In its opinion, the Court emphasized the importance of the role of the jury when its fact finding role is directly related to the severity of the punishment to be imposed:

McMillan [v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)], then, recognizes a question under both the Due Process Clause of the Fourteenth Amendment and the jury guarantee of the Sixth: when a jury determination has not been waived, may judicial factfinding by a preponderance support the application of a provision that increases the potential severity of the penalty for a variant of a given crime? The seriousness of the due process issue is evident from Mullaney [v. Wilbur's] [421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)] insistence that a State cannot manipulate its way out of [In re] Winship, [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)] and from Patterson [v. New York's], [432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)] recognition of a limit on state authority to reallocate traditional burdens of proof; the substantiality of the *6 jury claim is evident from the practical implications of assuming Sixth Amendment indifference to treating a fact that sets the sentencing range as a sentencing factor, not an element. [Note 6]
[Note 6]. The dissent repeatedly chides us for failing to state precisely enough the principle animating our view that the carjacking statute, as construed by the Government, may violate the Constitution. See post [119 S.Ct.] at 1229, 1235-1236, 1237. The preceding paragraph in the text expresses that principle plainly enough, and we re-state it here: under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Because our prior cases suggest rather than establish this principle, our concern about the Government's reading of the statute rises only to the level of doubt, not certainty.
Contrary to the dissent's suggestion, the constitutional proposition that drives our concern in no way "call[s] into question the principle that the definition of the elements of a criminal offense is entrusted to the legislature." Post, [119 S.Ct.] at 1236 (internal quotation marks omitted). The constitutional guarantees that give rise to our concern in no way restrict the ability of legislatures to identify the conduct they wish [to] characterize as criminal or to define the facts whose proof is essential to the establishment of criminal liability. The constitutional safeguards that figure in our analysis concern not the identity of the elements defining criminal liability but only the required procedures for finding the facts that determine the maximum permissible punishment; these are the safeguards going to the formality of notice, the identity of the factfinder, and the burden of proof.
The terms of the carjacking statute illustrate very well what is at stake. If serious bodily injury were merely a sentencing factor under § 2119(2) (increasing the authorized penalty by two thirds, to 25 years), then death would presumably be nothing more than a sentencing factor under subsection (3) (increasing the penalty range to life). If a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determinations of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment. It is therefore no trivial question to ask whether recognizing an unlimited legislative power to authorize determinations setting ultimate sentencing limits without a jury would invite erosion of the jury's function to a point against which a line must necessarily be drawn.
Jones, 119 S.Ct. at 1224. In Jones, the Court noted that a contrary ruling would give rise to serious constitutional concerns. The Supreme Court's reasoning in Jones is very similar to our reasoning in Weller, where we held that, in essence, the alternative provisions of section 893.135 are lesser included offenses that must be submitted to the jury. Obviously, under the provisions of section 893.135 and its punishment scheme, the jury's role is critical. See Weller.
In the instant case, the jury was instructed that it could alternatively find Estevez guilty of a number of lesser included offenses, including: (1) possession of cocaine; (2) trafficking in the amount of 28 to 200 grams; (3) trafficking in the amount of 200 to 400 grams; and (4) attempted trafficking. To accept the State's *7 position on this issue would, in essence, impair the jury's inherent power to pardon and, more precisely, its power to find the defendant guilty of one of these lesser offenses. More importantly, it would invade the jury's historical function as fact finder. See Weller.
Here, it appears that the original trial judge and the parties involved intended for the jury to make an express finding as to the amount of cocaine involved as mandated by Weller. Unfortunately, the substitute judge, apparently misinterpreting the original trial judge's alteration of the verdict form, accepted the jury's incomplete verdict, which made no express reference to the amount of cocaine. Because the jury did not make an express finding that Estevez trafficked in cocaine in an amount of 400 grams or more, we agree with the district court that the trial judge improperly imposed the mandatory minimum sentence for cocaine trafficking under section 893.135. In short, trial judges are not free to "direct a verdict" as to the amount of cocaine involved in a trafficking offense, even where the evidence presented by the State as to the amount is not controverted.

CONCLUSION
Accordingly, we answer the certified question in the affirmative and hold that even in cases where the evidence is uncontroverted, the jury must still expressly determine the amount of cocaine involved before the relevant mandatory minimum sentence under the trafficking statute can be imposed. Accordingly, we approve the district court's decision and remand this matter for further proceedings consistent herewith.
It is so ordered.
SHAW, PARIENTE and LEWIS, JJ., concur.
HARDING, C.J., concurs with an opinion.
QUINCE, J., dissents with an opinion, in which WELLS, J., concurs.
HARDING, C.J., concurring.
While I agree with the conclusion reached by the majority, I find it necessary to further clarify the precedent the majority addresses. In addition to its theory of a jury pardon, the State relies heavily on the language of Overfelt, where the district court stated and we agreed that "[b]efore a trial court may enhance a defendant's sentence or apply the mandatory minimum sentence for use of a firearm, the jury must make a finding that the defendant committed the crime while using a firearm either by finding him guilty of a crime which involves a firearm or by answering a specific question of a special verdict form...." State v. Overfelt, 457 So.2d 1385, 1387 (Fla.1984) (emphasis added) (quoting Overfelt v. State, 434 So.2d 945, 948 (Fla. 4th DCA 1983)). The State relies on this language to reach the conclusion that the jury form in the instant case was sufficient. This conclusion is misguided. Overfelt was a case where the trial judge reclassified the defendant's conviction at sentencing from attempted third-degree murder to a felony of the second degree, pursuant to the enhancement provisions of section 775.087(1), Florida Statutes (1983), even though at trial the jury made no finding as to whether the defendant possessed a firearm. Upon review, this Court held that the trial judge's actions were impermissible. In Tucker, we further clarified Overfelt and other related decisions and held that the first prong of Overfelt (where a defendant is found guilty of a crime which involves a firearm) is only satisfied if the verdict form itself contains an "express reference" to the specific crime with which the defendant is being charged. See Tucker v. State, 726 So.2d 768, 772 (Fla.1999). An enhancement based on a mere reference to the charges in the information, without an explicit finding by the jury, does not reach the level that Tucker mandates and is contrary to the longstanding principles of jury autonomy and independence.
*8 QUINCE, J., dissenting.
I disagree with the majority and would uphold the sentence imposed by the trial court. In its analysis of State v. Hargrove, 694 So.2d 729 (Fla.1997), the majority fails to address an important distinction set forth in the case. Hargrove was charged with first-degree murder by shooting the victim with a firearm, but he was convicted of second-degree murder. The trial court imposed the mandatory minimum sentence because the crime was committed with a firearm. The Second District Court of Appeal affirmed the conviction but overturned the mandatory minimum sentence.
On review, this Court approved the Second District's holding. However, this Court distinguished cases like Hargrove, where the defendant is convicted of a lesser included offense without a specific finding, and cases that involve a verdict of "guilty as charged." See id. at 731(recognizing that Hargrove did not involve a verdict of guilty as charged, where the charge was a crime using a firearm, and that such a verdict would specifically incorporate a finding that the crime involved a firearm). While this Court in Hargrove continued to reason that a specific jury question was the clearest way to get a finding that would support an enhancement, a specific jury question was not required under State v. Overfelt, 457 So.2d 1385 (Fla.1984). We said Overfelt only requires "a clear jury finding." Hargrove, 694 So.2d at 731. Thus, "the mandatory minimum can be based on jury verdicts which specifically refer to the use of a firearm, or to the information where the information contained a charge of a crime committed with the use of a firearm." Id. (emphasis added and citations omitted).
The trial court imposed the mandatory minimum in this case because the jury returned a verdict finding Estevez guilty of trafficking in cocaine as charged in Count I of the information. Hargrove and Overfelt require either a specific jury finding or a verdict referring specifically to the information. This case offers the latter. From the indictment to the verdict, this matter involved trafficking in cocaine in excess of 400 grams; the amount of cocaine was not disputed or refuted at trial. Thus, without any evidence to the contrary, the jury deliberated the guilt or innocence of the defendant based on this amount of cocaine. It was under these circumstances that the jury returned its verdict. In light of these facts, the verdict should be interpreted in accord with the indictment and is sufficient to support the imposition of the mandatory minimum.
This is not a situation where the jury was attempting to exercise its ultimate power to pardon.[5] If that were the case, the jury could have found Estevez not guilty or guilty of a lesser included offense by marking another line on the jury form. However, the jury issued a "clear jury finding" that Estevez was guilty of drug trafficking as charged in the information. *9 Because the information charged Estevez with being in possession of 400 grams or more of cocaine, the trial court was correct in sentencing Estevez to the mandatory minimum as prescribed by section 893.135(1)(b)c, Florida Statutes (1997).
Finally, I disagree with the majority's disposition of this matter. Since, under the majority's analysis, there was some ambiguity concerning the proper verdict, I would remand this case to the trial court for a new trial. See United States v. Barrett, 870 F.2d 953, 955 (3d Cir.1989)(quoting from 1 Edward J. Devitt & Charles B. Blackmar, Federal Jury Practice and Instructions § 18.05, at 584 (3d ed.1977), for the proposition that "[w]hen a jury is instructed on a lesser-included offense and it returns a general verdict of guilty, the verdict is fatally ambiguous and the case will be remanded for new trial").
WELLS, J., concurs.
NOTES
[1] The form contained separate provisions for the jury's findings as to the conspiracy charge.
[2] The parties consented to the crossing out of the line in the verdict form and the trial judge's modified instructions.
[3] The record does not reflect why the judge who presided over the trial had been replaced by a substitute judge to accept the jury's verdict.
[4] Section 775.087(1), Florida Statutes (1983), provides:

Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows:
(a) In the case of a felony of the first degree, to a life felony.
(b) In the case of a felony of the second degree, to a felony of the first degree.
(c) In the case of a felony of the third degree, to a felony of the second degree.
[5] The nature of a pure jury pardon was discussed by Justice Shaw in his dissent in State v. Wimberly, 498 So.2d 929 (Fla.1986):

The ultimate exercise of the jury pardon power is a not guilty verdict rendered contrary to the law and evidence, thus expressing the jury's refusal to enforce a law of which it disapproves. Such verdicts are significant in a democracy as a barometer of public opinion and as an augur of the course of future law. The historic trial of John Peter Zenger of Colonial New York for libeling the royal governor was such an instance. The jury's not guilty verdict, contrary to the law and the evidence, reflected public repudiation of extant law on libeling public officers and portended the American Revolution and the right to a free press embodied in the first amendment to the United States Constitution. This type of jury pardon is constitutionally grounded on the right to a jury trial and the finality of a jury verdict. Our judicial system is able to tolerate such aberrations because they are rare and we have no remedy for an absence of public support of the law short of abrogating the constitutional right to a jury trial and the bar against twice being placed in jeopardy for the same offense. Such verdicts are essentially political judgments, not based on the evidence.
Id. at 932 (Shaw, J., dissenting) (footnote omitted).