969 So.2d 544 (2007)
Jorge DELEMOS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-2447.
District Court of Appeal of Florida, Second District.
November 28, 2007.
James Marion Moorman, Public Defender, and Julius J. Aulisio, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Susan M. Shanahan, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Jorge Delemos appeals his judgment for conspiracy to traffic in cocaine (count 1), trafficking in cocaine (count 5), and possession of paraphernalia (count 7).[1] He challenges the trial court's decision to add a fifteen-year minimum mandatory term to his sentence on count 5 while resolving his motion pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), which sought only to remove a similar minimum mandatory term from the sentence on count 1. We conclude that the trial court lacked authority to increase the sentence on count 5 when it corrected the sentence on count 1. Although the trial court's shifting of the minimum mandatory term from one sentence to the other undoubtedly seemed reasonable to that court, under existing statutes and case law the increase in the sentence for count 5 imposed after Mr. Delemos began serving that sentence violated principles of double jeopardy. We therefore reverse the amended sentence *545 on count 5 and remand with instructions to strike the fifteen-year minimum mandatory term.

I. FACTS AND PROCEDURAL BACKGROUND
Mr. Delemos was the target of a sting operation intended to uncover drug trafficking. Originally, undercover officers purchased drugs from another individual on three separate occasions. When the officers thereafter arrested that individual, he agreed to cooperate with law enforcement and revealed Mr. Delemos as his supplier. A search of Mr. Delemos's residence revealed large quantities of cocaine.
The State charged Mr. Delemos with conspiracy to traffic in cocaine, trafficking in cocaine, and possession of paraphernalia. At trial, the State offered into evidence fourteen separate exhibits consisting of varying quantities of cocaine. Some of these quantities were the drugs found in Mr. Delemos's residence. Others were the drugs that had been seized during the transactions with the first individual arrested, drugs which the target accused Mr. Delemos of supplying.
The verdict form gave the jury only two options on count 1, conspiracy to traffic in cocaine: "guilty as charged" or "not guilty." Notably, count 1 of the amended information charged Mr. Delemos with conspiring to "traffic in 400 grams or more of cocaine, in violation of Florida Statutes 893.135(5) and 893.135(1)(b)." The jury returned a verdict of guilty as charged on count 1.
The verdict form on count 5 directed that if the jury found the defendant guilty of trafficking in cocaine, it must then decide whether the amount of the cocaine was (1) 400 grams or more, (2) between 200 and 400 grams, or (3) between 28 and 200 grams. The jury returned a verdict under subsection (1) of guilty of trafficking in cocaine in an amount in excess of 400 grams. The jury also returned a verdict of guilty as charged on count 7, a misdemeanor offense.
At sentencing, the trial judge initiated a discussion regarding whether the fifteen-year minimum mandatory sentence required by section 893.135(1)(b)(1)(c), Florida Statutes (2001), applied both to the conspiracy to traffic in cocaine charge as well as the trafficking in cocaine charge. The prosecutor argued that the minimum mandatory term would apply to both offenses. Although it is clear that the prosecutor expected the trial court to impose the minimum mandatory term on the count for trafficking in cocaine, the prosecutor did not affirmatively request the minimum mandatory sentence for the conspiracy charge and it is unclear from our transcript whether the prosecutor expected the trial judge to impose the minimum mandatory term to both counts 1 and 5.
The trial judge imposed the sentences as follows:
It'll be the judgment of the court and the sentence at law that on counts I and V, that you be adjudicated to be guilty and be sentenced to 15 years with the Department of Corrections to be followed by a period of 5 years of probation. On count I, there would be a minimum mandatory sentence of 15 years."
(Emphasis added.) The judge orally imposed a 364-day sentence on the misdemeanor charge. The court then asked, "Have I omitted anything else?" The prosecutor answered, "Court costs, I believe." Court costs were imposed and, after some brief further discussion, the hearing was concluded. There was no discussion regarding the verdict form and whether it permitted the fifteen-year minimum mandatory on count 1. In addition, *546 the State did not object to the court's failure to impose any minimum mandatory term on count 5.
The judgment and sentences were entered on May 4, 2005. Mr. Delemos filed a timely notice of appeal on May 10. The State did not file a cross-appeal. On February 1, 2007, Mr. Delemos filed a motion to correct a sentencing error pursuant to rule 3.800(b)(2).[2] He alleged only that the trial court erred in imposing the fifteen-year minimum mandatory term on count 1 in the absence of a jury finding that the amount of cocaine involved for that count was 400 grams or more.[3] The trial court granted the motion to correct sentencing error. In a written order, the trial court directed the clerk of the circuit court to enter amended sentencing documents deleting the fifteen-year minimum mandatory term on count 1 and replacing it with a three-year minimum mandatory term as required by section 893.135(1)(b)(1)(a).[4]
The trial court, however, did not simply correct the sentence as requested by Mr. Delemos. It proceeded to add the fifteen-year minimum mandatory term it removed from count 1 onto the sentence originally imposed on count 5. In this appeal, Mr. Delemos takes issue solely with the trial court's addition of this fifteen-year minimum mandatory term to count 5, arguing that the trial court lacked the authority to increase this sentence based upon a motion to correct sentencing error challenging only the sentence on count 1.[5] We agree that under existing Florida law, this increase in the sentence on count 5 violated double jeopardy and was improper. See Pitts v. State, 935 So.2d 634 (Fla. 2d DCA 2006); Kenny v. State, 916 So.2d 38 (Fla. 4th DCA 2005).

II. DOUBLE JEOPARDY GENERALLY
The guarantee against double jeopardy appearing in the United States and Florida Constitutions generally consists of three separate constitutional protections: It protects against a second prosecution for the same offense after acquittal; it protects against a second prosecution for the same offense after conviction; and it protects against multiple punishments for the same offense. See United States v. DiFrancesco, 449 U.S. 117, 129, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); see also Carawan v. State, 515 So.2d 161 (Fla.1987) (holding that the scope of the double jeopardy clause of the Florida Constitution is the same as that of the federal constitution), superseded by statute on other grounds as recognized in State v. Smith, 547 So.2d 613, 614 (Fla.1989). Here, we are concerned *547 with the last of these protections the prohibition against multiple punishments for the same offense. The rationale behind this prohibition has been explained thus:
For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offence? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value?
Ex parte Lange, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873).
The protections of the double jeopardy clause are tied in large part to a "public interest in the finality of criminal judgments." See DiFrancesco, 449 U.S. at 129, 101 S.Ct. 426 (quoting Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)). As a result, the analysis of double jeopardy as a limitation upon resentencing for an offense depends in large part upon the level or degree of finality accorded to the original sentence when it was first imposed. DiFrancesco, 449 U.S. at 134-35, 101 S.Ct. 426.
Under federal law, Congress has constitutionally provided the government with explicit statutory authority to appeal sentences in criminal cases. As a result, in federal courts the finality of a sentence based simply upon its oral pronouncement is relatively limited. Id. at 131, 101 S.Ct. 426. Federal courts are thus often permitted to correct a sentence to increase its term, at least during the appellate process, without running afoul of double jeopardy protections. See id.; Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947). In that context, the Supreme Court has emphasized, "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." Bozza, 330 U.S. at 166-67, 67 S.Ct. 645.
For better or worse, not all states limit the finality of sentences upon oral pronouncement in the same manner that federal law does. Because the extent of the protection against double jeopardy hinges upon the finality of the sentence, double jeopardy can provide greater rights to a defendant in a state court if the state law accords a level of finality to a sentence that federal law does not. See Pennsylvania v. Goldhammer, 474 U.S. 28, 30-31, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (reversing the Pennsylvania Supreme Court's holding that double jeopardy precluded resentencing on counts that were affirmed on appeal when other counts were reversed as inconsistent with the rationale of DiFrancesco, but remanding for the court to consider whether state law permitted the state to seek review of the sentences or accorded finality to them). Thus, in state court the question of whether a resentencing violates prohibitions against double jeopardy depends upon the level or degree of finality that the laws of the specific state accord to sentences at any given time during the sentencing process. See, e.g., State v. Gruetzmacher, 271 Wis.2d 585, 679 N.W.2d 533 (2004); Cardwell v. Commonwealth, 12 S.W.3d 672 (Ky. 2000). The Cardwell court phrased the question as whether the defendant has "a legitimate expectation in the finality of his *548 sentence." 12 S.W.3d at 675. Here, we must examine whether, under Florida law, Mr. Delemos had a legitimate expectation in the finality of his sentence on count 5 when the trial court sought to amend the sentence to add the fifteen-year minimum mandatory term. We conclude that under existing Florida law, the sentence was final and thus not subject to correction without violating principles of double jeopardy.
III. FLORIDA LAW AND THE FINALITY OF A SENTENCE AT THE CONCLUSION OF THE SENTENCING HEARING
Florida law generally accords a level of finality to a sentence once it has been orally pronounced and the defendant has begun to serve the sentence. See Ashley v. State, 850 So.2d 1265 (Fla.2003). In Ashley, the trial court orally pronounced a sentence that designated the defendant a habitual felony offender, even though the court intended to designate the defendant a habitual violent felony offender. The written sentencing documents indicated the defendant was a habitual violent felony offender. Realizing the error, the trial court had the defendant returned to the courtroom for resentencing three days later. At this resentencing, the trial court orally pronounced the defendant to be a habitual violent felony offender.
The Florida Supreme Court reversed the habitual violent felony offender sentence in Ashley. Noting "the longstanding principle of law" that a court's oral pronouncement of sentence controls over the written document, the supreme court concluded that the double jeopardy clause prohibited the correction because the sentence was imposed upon oral pronouncement and Ashley had begun to serve it. Id. at 1267-68.[6]
Once a sentence is orally pronounced and the defendant has begun to serve the sentence, therefore, it is accorded finality unless there is a mechanism by which the aggrieved party can seek timely review, either by motion or appeal. Obviously a defendant is accorded the right to challenge any sentencing error before or pending appeal by way of rule 3.800(b) and may seek review of preserved sentencing errors by direct appeal. Thus, a defendant has a broad right in Florida to challenge the finality of a sentence after it has been orally pronounced and after he has begun to serve the sentence.
An argument might be made that a defendant's action in seeking review of a sentence and relief from it should suspend the finality of all other sentences imposed in the same proceedingnot just the finality of the specific sentences challenged by the motion. That is, a defendant could not choose to challenge only one sentence in an aggregate sentencing scheme without providing the courts with the opportunity to revisit the related sentences. Florida law, however, rejects this proposition.
In Fasenmyer v. State, 457 So.2d 1361 (Fla.1984), the Florida Supreme Court held that if an appellate court reduced the severity of the sentence for one count in a multi-count judgment and remanded for resentencing, the trial court could not disturb the remaining sentences on remand without violating principles of double jeopardy. "We conclude that the concept of aggregate sentencing on interdependent *549 offenses as it relates to a trial judge's desire to effect the original sentencing plan does not justify modification, on remand after appeal, of sentences on convictions not challenged on appeal or disturbed by the appellate court." Id. at 1366; see also Burnett v. State, 890 So.2d 335 (Fla. 2d DCA 2004); Seago v. State, 627 So.2d 1316 (Fla. 2d DCA 1993); Gordon v. State, 635 So.2d 1017 (Fla. 1st DCA 1994).[7]
This analysis has also been applied in the context of a defendant's motion to correct sentence pursuant to rule 3.800(b)(2). This court has specifically held that a motion to correct sentence directed to the sentence on one count does not authorize the trial court to modify a legal sentence on another count. Pitts, 935 So.2d at 635[8]; see also Kenny v. State, 916 So.2d 38 (Fla. 4th DCA 2005) (holding trial court could not change sentences in two cases not implicated in motion to correct sentencing error).[9]
Under Florida law, therefore, the defendant is permitted to pick and choose which sentences to challenge in a multicount judgment, either on appeal or by way of a motion to correct sentencing error, without affecting the finality of the other sentences. The finality of Mr. Delemos's sentences on counts 5 and 7 was not affected by his request for relief on count 1. Those sentences must be considered "final" unless they were otherwise subject to challenge by the State or correction by the court.
IV. THE COURT'S ABILITY TO INCREASE A SENTENCE AFTER THE CONCLUSION OF THE SENTENCING HEARING
In this case, the State did not file a motion or take any other step to have the sentence on count 5 increased. The trial court essentially increased the sentence on its own motion. In context, the trial court's action may seem reasonable but it was not authorized by law.
The rules of procedure give a trial court two options by which it may alter a sentence once imposed without a motion from a party. Under rule 3.800(c), it may "reduce or modify" a sentence within a sixty-day window. Under rule 3.800(a), it can correct an "illegal" sentence at any time.
Rule 3.800(c) does not apply in this case because that rule allows the trial court discretion to give the defendant a more favorable incarcerative sentence. See Sterling v. State, 682 So.2d 694 (Fla. 5th DCA 1996). The only circumstance in which it may add a condition that might be deemed an increase in the sentence is when it adds a condition of probation or community control under chapter 948. See Harroll v. State, 960 So.2d 797, 798 (Fla. 3d DCA 2007).
Rule 3.800(a) only allows the trial court to modify an "illegal" sentence. We are *550 not completely convinced that the sentence originally imposed on count 5 was an "illegal sentence," even though it lacked the minimum mandatory term required by section 893.135(1)(b)(1)(c). Admittedly, defining what is an "illegal sentence" under rule 3.800(a) is no easy task. See, e.g., Carter v. State, 786 So.2d 1173 (Fla.2001).[10] The vast majority of the cases defining this term in the context of rule 3.800(a) involve defendants seeking to reduce their sentences, not courts seeking to increase sentences.[11] There is no question that the State could have objected to the omission of the minimum mandatory term on count 5 at the sentencing hearing and preserved this issue for appeal as an "unlawful" sentence under rule 9.140(c)(1)(M), but it is more difficult to conclude that such a sentence is "illegal" in a way that inures to the State's benefit.[12]
However, even if the sentence on count 5 were illegal for failing to include the minimum mandatory term, this court has previously held that double jeopardy bars an increase in a sentence once it is imposed and the defendant begins serving it, at least in the absence of a proper appeal, "even if the original sentence was illegal or otherwise erroneous and the correction conforms to applicable law or to the court's and parties' intentions at sentencing." Pate v. State, 908 So.2d 613, 614 (Fla. 2d DCA 2005). Under those circumstances, the State is compelled to object and appeal the sentence or the sentence stands as originally imposed. See also Oliver v. State, 727 So.2d 271, 272 (Fla. 4th DCA 1999) (holding that a rule 3.800(a) motion cannot serve as a substitute for the state filing a proper appeal of a sentence imposed in error).
It is noteworthy that the State, having failed to preserve this issue at the sentencing hearing, had no procedural right to preserve this issue for appeal pursuant to rule 3.800(b). The State may utilize that rule only if the correction would "benefit the defendant" or "correct a scrivener's error." Obviously, this modification does not benefit Mr. Delemos. Likewise, nothing in the record suggests that the written sentence initially imposed on count 5 contained a scrivener's error. The trial judge specifically questioned the prosecutor at sentencing as to whether it could impose a minimum mandatory sentence on the conspiracy charge, and the prosecutor assured the trial judge that this was permissible. Thereafter, the court clearly pronounced a sentence which applied the minimum mandatory term only to the conspiracy charge. This is not a case in which a trial judge mistakenly transposed sentences on two counts. See, e.g., Murray v. State, 958 *551 So.2d 473 (Fla. 2d DCA 2007). Even if one could assume the trial court simply forgot to apply the minimum mandatory term to the trafficking charge, an assumption that is not necessarily supported by this record, such an oversight is not a scrivener's error and would not permit resentencing in a manner that increased Mr. Delemos's sentence. See Ashley, 850 So.2d 1265.

V. CONCLUSION
For the purpose of assessing whether double jeopardy precluded resentencing, Mr. Delemos's sentence on count 5 was "final" by the time he filed his motion to correct sentencing error. His challenge in the motion to correct the sentence on count 1 did not permit the trial court to correct the sentence on count 5 in a manner that increased the severity of that sentence. We therefore reverse the sentence on count 5 and remand with directions to strike the minimum mandatory term on that sentence, effectively reinstating the sentence originally orally pronounced and imposed.
Reversed and remanded with directions.
SILBERMAN and LaROSE, JJ., Concur.
NOTES
[1] The remaining counts of the information involved a codefendant whose charges were resolved separately from Mr. Delemos's charges.
[2] The motion was filed before the initial brief and was therefore timely. See Fla. R.Crim. P. 3.800(b)(2).
[3] In his motion, Mr. Delemos relied upon State v. Estevez, 753 So.2d 1 (Fla.1999). We recognize that the Florida Supreme Court has recently pointed out that Estevez has been superseded by Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), at least to the extent that the reasoning in Estevez suggests that the harmless error analysis would not apply to an Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), error. See Galindez v. State, 955 So.2d 517, 522-23 (Fla.2007). The State has not cross-appealed or otherwise challenged the trial court's decision to grant the motion to correct sentencing error to remove the fifteen-year minimum mandatory term from count 1. We therefore do not comment on that issue but address only whether the court could then add that minimum mandatory term to count 5.
[4] It should be noted that neither party challenged this ruling before the circuit court, and neither sought to challenge it in this appeal.
[5] We note that Mr. Delemos preserved this argument by way of a second motion to correct sentencing error pursuant to rule 3.800(b)(2).
[6] In this case, we are not called upon to determine precisely when the combination of "oral pronouncement" and "begins to serve" actually occurs. See, e.g., Troupe v. Rowe, 283 So.2d 857 (Fla.1973); Gallinat v. State, 941 So.2d 1237 (Fla. 5th DCA 2006). Although there may be some confusion when a correction comes shortly after oral pronouncement, there appears to be no dispute that a defendant begins serving his sentence at least upon his transfer into the custody of the Department of Corrections, as occurred in this case.
[7] If the Florida Statutes and the Rules of Criminal Procedure permitted a trial court to modify a legal sentence that was imposed in conjunction with an illegal or unlawful sentence that was vacated, it is arguable that our outcome today might be different.
[8] Although we referred to the motion in Pitts as one to correct "an illegal sentence," the case involved an appeal of a judgment and sentence and thus the motion was in fact a motion to correct sentencing error under rule 3.800(b)(2).
[9] We recognize that a motion under rule 3.800(b) is designed to be the equivalent of an objection at the sentencing hearing. An objection at the hearing after oral pronouncement but before the defendant begins to serve a sentence presumably allows a trial court to adjust the entire sentencing package at that time. We are troubled by the fact that a defendant may obtain greater rights by delaying an objection until he has commenced to serve the sentence, but that outcome is the result of established precedent.
[10] The task is made more difficult still by the tendency of courts to use the term "illegal" to justify the state's appeal of a sentence under rule 9.140(c)(1)(M), perhaps without taking the time to distinguish between what is unlawful in a sentence versus what is illegal. See, e.g., State v. Chaves-Mendez, 809 So.2d 910, 910 (Fla. 5th DCA 2002) (holding sentence was "illegal" and subject to State appeal because the trial court initiated the plea negotiations that the sentence resulted from).
[11] We note that in the few cases discussing the possible increase of a sentence under rule 3.800(a), the cases have not foreclosed the possibility that an illegal sentence might be increased under rule 3.800(a), but have concluded that the specific sentences presented were not illegal. Gartrell v. State, 626 So.2d 1364 (Fla.1993); Thomas v. State, 921 So.2d 657, 660 (Fla. 2d DCA 2006); Robinson v. State, 757 So.2d 532 (Fla. 4th DCA 2000); Thomas v. State, 648 So.2d 298 (Fla. 5th DCA 1995).
[12] We recognize that one case has so held. See Allen v. State, 853 So.2d 533 (Fla. 5th DCA 2003). The case appears to have applied a federal law analysis of double jeopardy as compared to the state law rule discussed in section II of this opinion.