30 So.3d 629 (2010)
Stephen J. GARDNER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D08-6198.
District Court of Appeal of Florida, Second District.
March 17, 2010.
*630 Noel H. Flasterstein of Law Offices of Noel H. Flasterstein, P.A., Tampa, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Jonathan P. Hurley, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Chief Judge.
Stephen J. Gardner appeals the summary denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Because we reverse for resentencing on his claim that his sentencing violated double jeopardy principles, Mr. Gardner's other claims are rendered moot.
Mr. Gardner, a minor in 2003 and 2004 at the time of the crimes for which he was charged, was prosecuted as an adult pursuant to section 985.227, Florida Statutes (2003). He alleges that the sentencing court violated the principles of double jeopardy by initially sentencing him to multiple, concurrent eight-year terms of incarceration for various felonies but laterafter returning from a lunch break by resentencing him to concurrent ten-year minimum mandatory sentences on those same charges. Double jeopardy may be raised for the first time in a 3.850 motion even if not raised at trial or on direct appeal. See Plowman v. State, 586 So.2d 454, 455 (Fla. 2d DCA 1991) ("Just as a prisoner does not waive a double jeopardy violation for failing to raise the issue at trial, we hold that a prisoner does not waive a double jeopardy violation for failing to raise the issue on direct appeal from the judgment and sentence."); see also Fla. R.Crim. P. 3.850(a)(1), (3). Because jeopardy attached at the conclusion of the hearing at which the court originally pronounced the sentences, see Ashley v. State, 850 So.2d 1265, 1269 (Fla.2003) (Pariente, J., concurring), the sentencing court had no authority to call Mr. Gardner back for resentencing. The postconviction court should have granted Mr. Gardner's motion to vacate his sentences and reimposed the original terms.
The relevant proceedings ended after the trial court sentenced Mr. Gardner to a combination of sentences for his various charges amounting to eight years' imprisonment followed by two years' community control and thirteen years' drug offender probation, ordered restitution be paid, and imposed several other conditions on probation. The trial court found sufficient grounds for a downward departure from the Criminal Punishment Code Sentencing Guidelines after concluding that Mr. Gardner required specialized treatment for a mental disorder unrelated to substance abuse or addiction, that he was amenable to treatment, and that the need for payment of restitution outweighed the need for a lengthy prison sentence.[1] After clarifying the provisions of conditional release and probation, the sentencing court asked, "Is there anything else, State, other than your objection to my departure that I failed to do?" The State responded that it needed to put its objection to the departure on the record, asserting only that "there [were] insufficient grounds to establish specialized treatment and restitution."
The court noted the objection, clarified the remaining terms of the various sentences, and concluded the proceedings:

*631 THE COURT: Any misdemeanors, time served.
MR. BODIFORD: Of course, that's it.
THE COURT: Thank you.
MR. BODIFORD: Judge, thank you for your indulgence.
THE COURT: Thank you everyone.
MR. ROSARIO: Thank you, Your Honor.
THE COURT: Have a good day. All right, let's take a 10-minute lunch break.
THE COURT: One more thing, Mr. Gardner, I don't know what excuse it is that you gave me before or someone gave me before for those [tattoo] teardrops, but my recollection of those teardrops is that they are indeed gang-related.
You're to have no association upon your release from custody with any known gangs or anyone that is known to be affiliated with a gang; do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: Thank you.
Mr. Gardner was taken from the room, and the court then took the announced lunch break. Notably, there is no discussion in the record up to this point of the possible application of a minimum mandatory sentence.
The same attorneys were before the court again following the lunch break. Returning to Mr. Gardner's case, the prosecutor announced that he had forgotten to place on the record his objection to the court's having sentenced Gardner to a term below the minimum mandatory sentence for his offenses.[2] At defense counsel's suggestion that the State would have to appeal or file a motion, the court replied, "I won't be doing that. You have to bring him back in ... I think we have to resentence him." The court directed counsel to find Mr. Gardner's family and ordered Mr. Gardner be returned to the courtroom.
The court continued the discussion with counsel and Mr. Gardner's family before Mr. Gardner returned to the courtroom. Upon Mr. Gardner's return, the court referred to the proceeding held before the break and the discussion with counsel after lunch, declared that a ten-year minimum mandatory sentence applied to his case, and imposed the longer sentence. At the conclusion of the second hearing, Mr. Gardner's sentence was increased from eight years' incarceration on the armed burglary charges to ten-year minimum mandatory sentences; the other terms remained unchanged.
Critical to the court's belief that resentencing was necessary seems to be its conclusion that failure to sentence Mr. Gardner to the ten-year minimum mandatory sentence would result in an automatic reversal on appeal by the State. That conclusion is well-supported. See § 775.087(2)(b), (d), Fla. Stat. (2003) (prohibiting imposition of a lesser sentence than otherwise required by law and clarifying the legislative intent that "the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted"); State v. Calzada-Padron, 708 So.2d 287, 287 (Fla. 2d DCA 1996) ("Section 775.087(2) contains no provision permitting the trial court to exercise its discretion in imposing a ... minimum *632 mandatory prison sentence once a defendant has been convicted of certain enumerated felonies.").
Nevertheless, the court had no authority to reopen the proceedings once the hearing had concluded and double jeopardy had attached. "Florida law generally accords a level of finality to a sentence once it has been orally pronounced and the defendant has begun to serve the sentence." Delemos v. State, 969 So.2d 544, 548 (Fla. 2d DCA 2007). While "there appears to be no dispute that a defendant begins serving his sentence at least upon his transfer into the custody of the Department of Corrections," id. at 548 n. 6, the length of time between the end of one proceeding and the start of another has little effect upon double jeopardy considerations. See Figueroa v. State, 3 So.3d 428, 429 (Fla. 2d DCA 2009) (reversing a minimum mandatory sentence imposed during a proceeding held one day after the initial sentencing); Brown v. State, 965 So.2d 1234, 1238 (Fla. 5th DCA 2007) (reversing a sentencing "correction" made at an undefined point after a hearing had concluded); Obara v. State, 958 So.2d 1019, 1021 (Fla. 5th DCA 2007) (reversing a sentence imposed on a defendant recalled to the courtroom following sentencing but before he was transferred from the court's custody); Shepard v. State, 940 So.2d 545, 548 (Fla. 5th DCA 2006) (reversing a sentence imposed after the defendant was called back fifty minutes after the proceeding had ended).
Absent a proper appeal, double jeopardy considerations bar increasing even an illegal sentence:
Once a sentence has been imposed and the person begins to serve the sentence, that sentence may not be increased without running afoul of double jeopardy principles. Ashley v. State, 850 So.2d 1265, 1267 (Fla.2003). This is true even if the original sentence was illegal or otherwise erroneous and the correction conforms to applicable law or to the court's and parties' intentions at sentencing.
Pate v. State, 908 So.2d 613, 614 (Fla. 2d DCA 2005) (emphasis added). This court has further clarified Pate in holding:
[E]ven if the sentence ... were illegal for failing to include the minimum mandatory term, this court has previously held that double jeopardy bars an increase in a sentence once it is imposed and the defendant begins serving it, at least in the absence of a proper appeal.... Under those circumstances, the State is compelled to object and appeal the sentence or the sentence stands as originally imposed.
Delemos, 969 So.2d at 550 (emphasis added); see also Figueroa, 3 So.3d at 429 (reversing imposition of a twenty-five-year minimum mandatory sentence and directing reimposition of the original twenty-year sentence).
Although it may appear to serve the interests of judicial economy to permit a trial court to fix an apparently erroneous sentence without requiring a motion or proper appeal, there are clear procedures for correcting such errors on appeal if properly preserved. See Delemos, 969 So.2d at 549-50 (cataloging the proper procedures for increasing a sentence even after the conclusion of a sentencing hearing). In this case, however, those procedures were not followed and the constitutional prohibition against increasing Mr. Gardner's sentence after jeopardy attached was violated.
Accordingly, we are compelled to reverse the denial of Mr. Gardner's motion for postconviction relief on this ground and remand with directions that the trial court reimpose the original eight-year sentences *633 for those offenses. Mr. Gardner need not be present for resentencing.
Reversed and remanded.
WALLACE, J., Concurs.
ALTENBERND, J., Dissents with opinion.
ALTENBERND, Judge, Dissenting.
I dissent. I am not certain whether we are holding that Mr. Gardner is entitled to the eight-year term of imprisonment, even though it is illegal, or that he is entitled to receive this sentence subject to the State's right to have that sentence reversed in a subsequent appeal.
Although I dissent, I recognize the possibility that my disagreement is actually a disagreement with either the holding in Ashley v. State, 850 So.2d 1265 (Fla.2003), or the case law applying it. Ashley holds that "[o]nce a sentence has been imposed and the person begins to serve the sentence, that sentence may not be increased without running afoul of double jeopardy principles." Id. at 1267. The courts of Florida have interpreted this holding very strictly. Once the sound waves from the judge's oral pronouncement have reached the court reporter's ears or the microphone of the digital recording device, we seem to think that the defendant has begun to serve the sentence. At a minimum, once the defendant's sentencing hearing has concluded, we rule that he is serving the sentence even when the oral pronouncement has not been rendered by a written sentence. I am not convinced that a defendant who sits in the courthouse during the lunchtime between an initial illegal sentencing and a resentencing has begun to serve the illegal sentence for purposes of a constitutional double jeopardy analysis.
Mr. Gardner went to a sentencing hearing having agreed to a maximum prison sentence of ten years' imprisonment.[3] As explained by the majority opinion, the trial court initially imposed a sentence that did not include the mandatory term, and after a short lunch break, the trial court corrected this error. Mr. Gardner filed a motion for rehearing, but when he received no relief, he did not appeal. Instead, almost two years later, Mr. Gardner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.
Legally, the trial court was required to sentence the defendant pursuant to the express terms of the statute to the ten-year minimum term. The original sentence, which included a downward departure rather than the minimum mandatory term, was an erroneous sentence. See State v. Calzada-Padron, 708 So.2d 287 (Fla. 2d DCA 1996); see also Beard v. State, 819 So.2d 987 (Fla. 2d DCA 2002) (affirming imposition of the minimum mandatory portion of a life sentence, as automatic, upon resentencing after remand of direct appeal); Van Buren v. State, 500 So.2d 732 (Fla. 2d DCA 1987) (holding that efforts to correct unlawfully lenient sentences are not per se violative of double jeopardy proscriptions and that double jeopardy arises only when efforts are undertaken to increase a sentence that was legal when originally imposed). Both the First and Fifth Districts have held that resentencing to impose minimum mandatory terms is required where the original sentences fail to include the nondiscretionary terms. See State v. Vanderhoff, 14 So.3d 1185 (Fla. 5th DCA 2009); State v. Couch, 896 So.2d 799 (Fla. 1st DCA 2005). Thus, unless the State has forever waived the right to obtain the mandated sentence *634 by failing to note this error before the hearing concluded, the original sentence was subject to reversal on appeal by the State and may also be subject to reversal when imposed on remand from this appeal.
In Delemos v. State, 969 So.2d 544 (Fla. 2d DCA 2007), I suggested that the Florida law on the issue of when a sentence becomes final for purposes of double jeopardy may be overly restrictive and that the U.S. Constitution may permit a longer window of time in which courts could correct errors made during oral pronouncement. I continue to believe that our case law does not reflect the extent to which simple human error is inevitable in oral pronouncements and that the constitutional doctrine of double jeopardy was never intended to make sentencing a game in which mental errors by judges and attorneys are irreparable even when the error is discovered minutes later. See United States v. DiFrancesco, 449 U.S. 117, 135, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (quoting Bozza v. United States, 330 U.S. 160, 166-67, 67 S.Ct. 645, 91 L.Ed. 818 (1947), for the principle that "[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner").
In other jurisdictions, the defendant's being taken into custody by the Department of Corrections or, at a minimum, the transfer of custody from the judiciary to the executive, is the point at which the defendant begins to serve the sentence, and the trial court loses its authority to resentence. See People v. Mendoza, 171 Cal.App.4th 1142, 90 Cal.Rptr.3d 315, 320-21 (2009) (holding that upon receipt of the judgment by the sheriff, the execution of the judgment is in progress); State v. Carr, 167 Ohio App.3d 223, 854 N.E.2d 571, 573 (2006) (holding that the execution of a sentence begins when the defendant is delivered to the institution where the sentence is to be served); State v. Jacobs, 200 Or.App. 665, 117 P.3d 290, 296 (2005) (holding a prison sentence is not executed until the defendant is delivered to the custody of the Department of Corrections); Maher v. State, 991 P.2d 1248, 1249 (Wyo. 1999) (holding that the relevant inquiry in deciding whether a defendant has begun serving a sentence is whether the defendant has been delivered to executive custody for that purpose); Francis v. United States, 715 A.2d 894, 898 n. 12 (D.C.1998) ("[T]he Double Jeopardy Clause is inapplicable absent a transfer of a convicted individual from the judiciary, which pronounced sentence, to the executive, which administers it.").
So long as a trial judge is not exercising his or her discretion to increase the severity of the overall sentence that the trial judge intended to impose at the oral pronouncement, I believe we could and should have a procedural mechanism by which trial judges are allowed to correct misstatements and confusions in sentences and to impose mandated sentencing conditions that were overlooked at oral pronouncement. When a judge inadvertently imposes a fifteen-year sentence on a third-degree felony and a five-year sentence on a second-degree felony, for example, I do not understand why constitutional double jeopardy should bar the judge from imposing the intended fifteen-year sentence for the second-degree felony even a few days after the mistake in the oral pronouncement.
A defendant has a right to a legal sentence. This defendant is about to receive the benefit of an illegal sentence, in all likelihood because a judge and several lawyers were anxious to go to lunch. Somehow, Florida's technical approach to double jeopardy allows inadvertent mistakes to give defendants the right not to legal *635 sentences, but to sentences that are often more like half jeopardy.
NOTES
[1] See § 921.0026(2)(d), Fla. Stat. (2003). We note that the eight-year sentence is consistent with what Mr. Gardner apparently believed to be successful, restitution-focused plea negotiations with the State and court at the change-of-plea hearing despite the ultimately open nature of his plea.
[2] In its answer brief, the State accepts Mr. Gardner's statement of the case and statement of facts. While the State suggests that the objection to the downward departure and sentencing below the minimum mandatory occurred only moments after the start of the morning sentencing hearing, both Mr. Gardner's statement of the case and facts and the record reflect that this discussion occurred shortly after the court returned from lunch.
[3] There may have been ineffective assistance of counsel in this case because it does not appear that Mr. Gardner understood that the trial court had no discretion and was compelled to impose a ten-year sentence.