ORFINGER, J.
 

 The State appeals the sentence imposed on Bradley James Vanderhoff after he entered an open no contest plea to three counts of attempted murder of a law enforcement officer. The State argues that the trial court erred by imposing downward departure sentences and by failing to apply the twenty-year minimum mandatory prison sentence required by the 10/20/ Life statute, section 775.087(2), Florida Statutes (2005). We reverse, as we con-' elude the trial court was without authority to waive the twenty-year minimum mandatory sentence mandated by statute.
 

 The information, charging Vanderhoff with three counts of attempted first-degree murder of a law enforcement officer, alleged that he possessed and discharged a firearm in the course of committing the crimes. As a result, the twenty-year minimum mandatory provision of section 775.087(2) was implicated. Immediately prior to jury selection, Vanderhoff entered an open plea to the court after there was a discussion concerning the potential sentences he faced if convicted:
 

 THE COURT: If he is convicted or [sic] charged, he is facing 10/20/Life, he is facing life in prison; right? Minimum of 10; isn’t that right, [State]?
 

 THE STATE: Sir?
 

 THE COURT: There is a minimum of 10?
 

 DEFENSE COUNSEL: A minimum of 20, Your Honor, because there is a [firearm] discharge.
 

 THE STATE: 20, Judge. And that’s — on the score sheet, he has no priors, Judge. By the score sheet, it’s 117. But that doesn’t take into account 10/20/Life. No prior criminal history, Judge.
 

 THE COURT: He has what?
 

 THE STATE: He has no prior criminal history, Judge.
 

 THE COURT: But you can’t use an isolated incident like this to go below the guidelines; right?
 

 THE STATE:
 
 Actually, you can, Judge. If it’s
 
 — Judge,
 
 if [Defense counsel] showed you it was an isolated incident, that it ivas unsophisticated in its execution, and he had remorse, you could deviate, and you could go below.
 

 THE COURT: Anyway, Y’all want to go to trial, I guess; don’t you?
 

 THE STATE:
 
 Judge, let me tell you this; From where I’m sitting, I icnoiv it’s isolated. I know it’s unsophisticated. The only thing that I think [Defense counsel] would have to prove to you is remorse, and I’ll just leave it at that.
 

 [[Image here]]
 

 DEFENSE COUNSEL: ... I think Mr. Vanderhoff is in a position now with the understanding, with some of our off-record discussions, that he may be prepared to tender a plea this afternoon
 
 *1187
 
 with the understanding by all the parties, Judge that you will not impose a sentence at this point. We will order a presentence investigation. We would schedule a sentencing at a later date when the Court has the ability to certainly review what the Probation and Parole Department finds and recommends. And we would be able to subpoena what witnesses we need for the board at that sentencing hearing, as well. And allow the State to do the same on their behalf, if that’s what they want to do.
 

 Is that right, Mr. Vanderhoff?
 

 THE DEFENDANT: Yes, Sir.
 

 DEFENSE COUNSEL: Is that what you want to do here this afternoon, sir?
 

 THE DEFENDANT: I want to be home with my kids. I want to be able to raise my kids.
 

 DEFENSE COUNSEL: Let me first preface this by saying this: There are no agreements as to what any type of sentence this Court might impose. You understand that?
 

 THE DEFENDANT: Yes, sir.
 

 DEFENSE COUNSEL: The Court will rely on the presentence investigation report that’s ordered, that’s done by the Department of Probation and Parole, and you, in fact, assist in getting that done through Probation. And the Court will take into consideration any other evidence or witnesses that we want to present on your behalf prior to the Court sentencing you. Do you understand that?
 

 THE DEFENDANT: Yes.
 

 DEFENSE COUNSEL:
 
 You understand that this Court has the authority and, power to sentence you how it sees fit.
 
 If there are mitigating circumstances that the Court finds, he may sentence you [sic] or he may sentence you up to life in prison. You understand that, as well?
 

 THE DEFENDANT: Yes.
 

 DEFENSE COUNSEL:
 
 And that pretty much goes from (sic) anything in between.
 
 Now you score, as the State’s indicated, a minimum of 117 months in the Department of Corrections.
 
 There is a mandatory sentence of 20 years that applies to each one of those counts. Do you understand that?
 

 THE DEFENDANT: Yes.
 

 DEFENSE COUNSEL:
 
 And ive have talked about presenting some mitigating circumstances to the Court. The court may find those mitigating circumstances. They may find that there are no mitigating circumstances to sentence you, other than pursuant to the guidelines and/or the statutes that deal with the 10/20/Life minimum mandatory.
 

 THE DEFENDANT: Right.
 

 DEFENSE COUNSEL: Is that your desire? Do you want to tender a plea open to the Court at this time:
 

 THE DEFENDANT: I’m scared to death, but yes.
 

 [[Image here]]
 

 THE COURT:
 
 ... We have also
 
 — the
 
 way the charges are, it’s a 10/20/Life, and the State, I believe, concedes there are two mitigating factors, lack of criminal
 
 history—
 

 DEFENSE COUNSEL: Well, Judge, I don’t want to speak for them, but what they indicate—
 

 THE STATE:
 
 I’ll say it. One of the ways you can do a doimwurd departure is if you find three things: Isolated incident, it was unsophisticated in its execution, and he sltows remorse.
 

 I can tell you it is isolated. No criminal history. Nothing like this in his past. And he had no plan. It ivas ■unsophisticated. What ivas he going to
 
 
 *1188
 

 do naked after taking a shot? He wasn't going anywhere.
 

 THE COURT: Anyway, I guess those are three factors, and that will be addressed later on.
 

 [[Image here]]
 

 THE COURT: Okay.
 
 Has anyone led you to believe that I or the sentencing judge is going to do
 
 — impose
 
 any particular
 
 sentence/
 

 THE DEFENDANT: No, sir.
 

 THE COURT:
 
 I mean, it could range froin probation to community control up to life imprisonment, basically.
 

 THE DEFENDANT: I understand, sir.
 

 THE COURT: And you believe this to be in your best interest under the circumstances?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: Okay. All right. Sir, your plea is accepted....
 

 (Emphasis added).
 

 Despite the State’s earlier advice to the contrary, at the sentencing hearing held several weeks later, the State informed the trial court that it was required to impose the twenty-year minimum mandatory sentence mandated by
 
 section
 
 775.087(2). Notwithstanding the statute, the trial court sentenced Vanderhoff to twelve years of probation, explaining:
 

 THE COURT: ... All right. You know this is a very difficult case. And it’s troubling because of the seriousness of the charges. But we do have a better understanding I think now what — what happened and some of the reasons perhaps why it happened. Mental health issues obviously come to, you know, come into play. Fortunately, no one was seriously injured.
 

 You were able to remain on bond apparently since this incident without violating any condition of your bond, which is important to the Court. But, also, it’s quite frankly, I mean, to be honest with you, I think it’s in your favor because I think if you were still incarcerated, I mean, that would — probably the Court probably would feel a little different, too. I mean, you do score — you could go to prison for life on this.
 
 There are some reasons the Court finds to depart from the guidelines. And it says the offense was committed, in an unsophisticated ■manner, and was an isolated incident for which, the defendant has shown remorse. That’s one of the statutory reasons. Also, it does speak of mental disorder but
 
 — amenable
 
 treatment and physical
 
 — some
 
 problems to some extent. I’m giving some weight to that also.
 

 [[Image here]]
 

 And then if you violate it, you are going to end up in prison more than likely. You are still facing a prison sentence of up to 10/20/Life sentence.
 

 (Emphasis added). The State again objected to the trial court’s failure to impose the twenty-year minimum mandatory sentence required by section 775.087, Florida Statutes, and this appeal followed.
 

 Because Vanderhoff discharged a firearm in the commission of the attempted murders, section 775.087(2)(a)2., Florida Statutes (2005), required the trial court to impose a twenty-year mandatory minimum sentence on each count.
 
 Arutyunyan v. State,
 
 863 So.2d 410, 412 (Fla. 4th DCA 2003);
 
 see
 
 § 775.087(2)(e), Fla. Stat. (2005) (“If the minimum mandatory terms of imprisonment imposed pursuant to this section exceed the maximum sentences authorized by s. 775.082, s. 775.084, or the Criminal Punishment Code under chapter 921, then the mandatory minimum sentence must be imposed .... ”); § 775.087(2)(d), Fla. Stat. (2005) (“It is the
 
 *1189
 
 intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms ... be punished to the fullest extent of the law .... ”);
 
 see generally State v. Calzada-Padron,
 
 708 So.2d 287, 287 (Fla. 2d DCA 1996) (recognizing that section 775.087 contains no provision permitting trial court to exercise discretion in imposing three-year minimum mandatory prison sentence once defendant has been convicted of certain enumerated felonies).
 

 The 10/20/Life statute, section 775.087(2), Florida Statutes (2005), re-, moved most sentencing discretion from the judicial branch, and instead, placed it in the executive branch by establishing a mandatory minimum sentencing scheme.
 
 See Green v. State,
 
 792 So.2d 643 (Fla. 1st DCA 2001); see
 
 also
 
 § 775.087(2), Fla. Stat. (2005); § 27.366(1), Fla. Stat. (2005). The discussion that occurred between the State, defense counsel and the trial court prior to Vanderhoffs plea, makes it clear that the parties incorrectly assumed that a mitigating factor that would justify a downward departure under the Criminal Punishment Code, could also allow the trial court to waive a minimum mandatory sentence.
 
 [1]
 
 This is error, as only the State Attorney has the discretion to waive the minimum mandatory sentence implicated here.
 
 See
 
 §§ 27.366, 775.087(5), Fla. Stat. (2005). While the State certainly contributed to the confusion that preceded the entry of Vanderhoffs plea, we cannot say it intentionally waived the minimum mandatory sentence. Further, the State corrected its earlier misadvice to the court prior to sentencing. At that point, Van-derhoff should have been permitted to withdraw his plea, either on his defense counsel’s motion or the court’s own initiative.
 

 Florida Rule of Criminal Procedure 3.172(c)(1) requires the trial judge to determine that a defendant understands the reasonable consequences of the plea, including “the maximum possible penalty, and any mandatory minimum penalty provided by law.... ”
 
 See Ashley v. State,
 
 614 So.2d 486, 488 (Fla.1993). The trial court clearly misinformed Vanderhoff, in part due to the State’s and defense counsel’s advice, that it could depart from the 10/20/ Life statute and sentence him from “probation to community control up to life imprisonment.” Consequently, Vanderhoff should be allowed to withdraw his plea.
 
 See, e.g., Boles v. State,
 
 827 So.2d 1073, 1074 (Fla. 5th DCA 2002) (observing that generally, when defendant is incorrectly advised of maximum sentence, he should be allowed to withdraw plea);
 
 Mantle v. State,
 
 592 So.2d 1190, 1193 (Fla. 5th DCA 1992) (explaining that if record reveals reasonable basis to conclude defendant was misled by statement at plea hearing made by judge or by one or both attorneys, he should be permitted to withdraw plea);
 
 see also Fernandez v. State,
 
 782 So.2d 944 (Fla. 4th DCA 2001) (vacating defendant’s convictions and sentences where record revealed defendant was misled by judge that he was facing 40 years as habitual offender when actually facing no more than 30 years when he pled no contest).
 

 We reverse the sentences imposed and remand this matter for further proceedings consistent with this opinion.
 

 REVERSED and REMANDED.
 

 PALMER, C.J. and LAWSON, J., concur.
 

 [1]
 

 . Because we conclude that the trial court’s failure to impose the minimum mandatory sentence required by section 775.087(3) is dispositive, we do not consider the downward departure from the sentencing guidelines.